No. 81,978

ROBERT A. SOKOL, *Appellant*, v. KANSAS DEPARTMENT OF SOCIAL
AND REHABILITATION SERVICES, *Appellee*.

(981 P.2d 1172)

Opinion filed July 9, 1999.

*Ronald W. Nelson*, of Rose & Nelson, of Overland Park, argued the cause and was on the brief for appellant.

*James F. Savage*, of the Kansas Department of Social and Rehabilitation Services, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by Robert A. Sokol pursuant to the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq*. Sokol appeals from a K.S.A. 1998 Supp. 65-516 proceeding where the Kansas Department of Social and Rehabilitation Services (SRS) validated an act of physical abuse by Sokol upon his 11-year-old son. Based on the validation of abuse, Sokol is barred from maintaining, working in, or volunteering in a child care facility or a family day care home until he completes a corrective action plan which has been deemed appropriate and approved by SRS or the record has been expunged pursuant to rules and regulations adopted by SRS.

This proceeding arises out of a divorce action wherein the parties have not successfully terminated the conflicts between them. Looking at the evidence in a light most favorable to the prevailing party (SRS), the facts are as follows:

The Sokols have four children. Their 11-year-old son was referred to a psychologist by the court to give the court guidance concerning custody and visitation. The son was visiting Sokol when Sokol inquired about what, if anything, he had told the psychologist. The son replied he had told the psychologist about his relationship with his father. The son reported his father then hit him many times with both hands, and when his father stopped hitting him, his father was out of breath. The son received a bruise about one inch in diameter on the inside of his elbow, a welt approximately two to three inches long on his biceps, and a large red section on the his back which contained four circular bruises. The bruises were dark blue in color without any yellowing. At the police station, the son was upset and crying, and he was afraid when he asked whether his father would find out he had talked to the police. The injuries were photographed.

Sokol denied any intent to injure his son, alleging he meant to strike his son on his buttocks with an open hand but his son squirmed, causing him to strike his son in the back and arm.

K.S.A. 1998 Supp. 65-516 provides:

"(a) No person shall knowingly maintain a child care facility or maintain a family day care home if, in the child care facility or family day care home, there resides, works or regularly volunteers any person who:

. . . .

(3) has committed an act of physical, mental or emotional abuse or neglect or sexual abuse as validated by the department of social and rehabilitation services pursuant to K.S.A. 38-1523 and amendments thereto and (A) the person has failed to successfully complete a corrective action plan which had been deemed appropriate and approved by the department of social and rehabilitation services, or (B) the record has not been expunged pursuant to rules and regulations adopted by the secretary of social and rehabilitation services;

. . . .

"(f) For the purpose of subsection (a)(3), an act of abuse or neglect shall not be considered to have been validated by the department of social and rehabilitation services unless the alleged perpetrator has: (1) Had an opportunity to be interviewed and present information during the investigation of the alleged act of abuse or neglect; and (2) been given notice of the agency decision and an opportunity to appeal such decision to the secretary and to the courts pursuant to the act for judicial review and civil enforcement of agency actions."

SRS has established a central registry into which it enters the names of all persons who have been determined to have committed

an act falling under K.S.A. 1998 Supp. 65-516(a)(3). Sokol's name will be, or has been, entered in that registry, which will prevent him from maintaining, working in, or volunteering in a child care facility or family day care home, so long as his name remains on the registry. That appears to be the sole consequence of the administrative proceeding before us.

We believe the trial court's reasoning to be sound. It is as follows:

"The thrust of Mr. Sokol's argument is that 'physical abuse' should be defined narrowly, because federal and state cases recognize that parental rights are fundamental, substantive rights in which the State cannot meddle absent a compelling and countervailing protective interest. In support of his position, Mr. Sokol cites *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972); *In re Cooper*, 230 Kan. 57, 631 P.2d 632 (1981); and *In re Woodward*, 231 Kan. 544, 550, 646 P.2d 1105 (1982).

"Mr. Sokol argues that, in furtherance of this important principle, this Court should define 'abuse' and 'physical abuse' identically with the Supreme Court's definition of 'physical injury' or 'physical harm' in *Paida v. Leach*, 260 Kan. 292, 917 P.2d 1342 (1996). There, the Court ruled:

'It is Paida's position that the legislature has defined abuse so that "if discipline in any form causes bodily injury, it is a form of discipline which merits an order of protection in favor of the victim." The legislature defined abuse in the context of the Act and focused on protecting spouses. There undoubtedly are instances when discipline of children escalates into domestic violence which would warrant relief under the Act, but discipline of children is not the chief evil at which the Act was aimed. The principal purpose of the legislation was to provide relief for battered spouses or cohabitants. Gottlieb & Johnson, 31 Kan. L. Rev. at 558-59. The discipline of children and the abuse of spouses share little common ground. Because these disparate family interactions fall under the same legislative enactment, the trial court can and should determine in light of all the circumstances in each individual case whether the plaintiff has shown abuse by a preponderance of the evidence. Those circumstances will include the age of alleged victim and his or her relationship to the alleged abuser. Neither reason nor the limits clearly expressed by the legislature in the Act permits a trial court judge to overlook the infliction of bodily injury. However, the Act is not intended to dictate acceptable parental discipline or unnecessarily interfere in the parent/child relationship absent a clear need to protect the child. The State's intrusion should be limited to injunctive relief where parental conduct causes more than minor or inconsequential injury to the child. Such a construction of the term "bodily injury" will prevent misuse or misapplication of the Act. Paida certainly has a point in arguing that it would be undesirable to have each judge freely imposing his or her own morality, own concept of what is acceptable, own notions of child rearing, or own standards for male-female relationships on the circumstances of the litigants. Contrary to

her intention, however, defining bodily injury to exclude trivial or minor consequences and require either substantial pain or impairment of physical condition would lessen the potential for the exercise of unbridled trial court discretion. *We conclude that bodily injury under the Act requires a finding of substantial physical pain or an impairment of physical condition.* (emphasis added)'

"Mr. Sokol argues that the S.R.S. finding that he is a validated perpetrator of abuse can only stand if his discipline of [his son] caused 'substantial physical pain or an impairment of physical condition.' He argues that [his son's] injuries are very similar to those described in *Barnett v. Barnett*, 24 Kan. App. 2d 342, 945 P.2d 870 (1997), where the Court of Appeals ruled that a child who received some welts and a reddening on his cheek as a result of parental discipline had not met the definition of 'abuse.'

"Mr. Sokol is undoubtedly correct: the minor, trivial physical injuries that [his son] received as a result of his father's discipline do not rise to the level of 'abuse' as defined by *Paida* and *Barnett*.

"However, *Paida* and *Barnett* are not controlling in this case. Those two cases were decided under the Protection from Abuse Statute (K.S.A. 60-3101 *et seq.*). Both cases dealt with the definition of abuse as it applies to disciplinary actions by a parent toward a child, and they work toward a definition of 'abuse' as it applies to discipline *within the family*. Those cases quite properly defer to a parent's right to discipline his or her child, so long as that discipline does not cause 'substantial physical pain or impairment of physical function.' The cases recognize that parents have different notions of what constitutes proper discipline, and a court should not interfere with a parent's right to administer discipline to his or her child absent the compelling purpose of protecting the child from substantial pain or impairment of physical function.

"In the context of a Protection from Abuse action, which addresses how parents behave toward their children within the domestic unit, this Court agrees with the holdings of *Paida* and *Barnett*. Orders in a PFA action can prohibit or substantially restrict contact between parent and child for up to a year, and obviously courts should not make such findings and enter such orders except in those cases where discipline goes beyond causing trivial, minor injuries.

"In fact, a PFA action was filed by Julie Bergmann, [the son's] mother, as a result of the November 30, 1995 discipline. That case was filed as case number 95C14452. At a hearing held on Dec. 22, 1995, after hearing the parties' testimony about the incident, this Court dismissed the PFA action because Ms. Bergmann failed to prove abuse by a preponderance of the evidence, and the bench note even reflects that the Court went on to find that the action was filed for an improper purpose (*i.e.*, to gain an advantage in the custody dispute between [the son's] parents).

"However, Mr. Sokol's arguments fail to recognize that 'abuse' as defined by K.S.A. 65-516 and K.A.R. 30-46-10 are much broader, encompassing a great deal of behavior by adults that would have to be tolerated within the domestic unit, but which we would find totally inappropriate in a day care worker who is charged

with caring for other people's children. Parents who must leave their children in day care facilities have every right to expect that the people who provide care for their children do not engage in discipline that causes even trivial, minor injuries to children.

"Although this Court, on a personal level, does not condone a whipping that leaves the parent breathless and leaves the child with welts and bruises, the Court cannot say that it is parental discipline that merits interference by the State. However, this Court is completely comfortable in saying that a parent who sees fit to discipline his own child like that has absolutely no business taking care of other people's children. If he treats his own child (whom we presume he loves) in that manner, what would he do to a child he doesn't know and love?

"The S.R.S. finding that Mr. Sokol committed an act of abuse within the meaning of K.S.A. 65-516, and the consequent entry of his name into the central registry is confirmed."

Sokol raises two issues on appeal. (1) He contends the agreed upon facts do not constitute a sufficient legal basis for the agency action, and (2) the trial court erred in granting judgment where petitioner had no opportunity to present evidence at the administrative level.

Appellate review of this case is in accordance with the KJRA, K.S.A. 77-601 *et seq*. In *Lindenman v. Umscheid*, 255 Kan. 610, 619, 875 P.2d 964 (1994), the court stated:

"The KJRA applies to 'all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act.' K.S.A. 77-603(a). Agencies are defined as those that are 'a state agency.' K.S.A. 77-602(a). In accordance with K.S.A. 77-603, the KJRA establishes the exclusive means of judicial review of agency action. K.S.A. 77-606. Agency action is defined as '(1) The whole or a part of a rule and regulation or an order; (2) the failure to issue a rule and regulation or an order; or (3) an agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise.' K.S.A. 77-602(b)."

Also, "[i]n reviewing questions of law, the trial court may substitute its judgment for that of the administrative agency, although ordinarily the court will give great deference to the interpretation of statutes and regulations of the enforcing agency. [Citation omitted]." *Kaufman v. Kansas Dept. of SRS*, 248 Kan. 951, 960, 811 P.2d 876 (1991).

In *Kaufman*, the court further stated:

"If the agency action is constitutionally authorized by statute, it is presumed valid on review unless it is not supported by substantial competent evidence and is so wide of its mark as to be outside the realm of fair debate, or is otherwise unreasonable, arbitrary, or capricious and prejudices the parties. *Vakas v. Kansas Board of Healing Arts*, 248 Kan. 589, Syl. ¶ 5 [808 P.2d 1355 (1991)]. The arbitrary and capricious test relates to whether a particular action should have been taken or is justified, such as the reasonableness of an agency's exercise of discretion in reaching a determination or whether the agency's action is without foundation in fact. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 381, 673 P.2d 1126 (1983). Arbitrary or capricious conduct may be shown where an administrative order is not supported by substantial evidence. *U.S.D. No. 461 v. Dice*, 228 Kan. 40, 50, 612 P.2d 1203 (1980).

"In reviewing an agency action, an appellate court is limited to ascertaining from the record whether there is substantial competent evidence to support the findings. Substantial evidence is 'such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' *Kansas Dept. of Health & Environment v. Banks*, 230 Kan. 169, 172, 630 P.2d 1131 (1981). In the application of the substantial evidence test, the appellate court may not reweigh the facts or substitute its own judgment even if it would have found differently. *Barnes v. Employment Security Board of Review*, 210 Kan. 664, Syl. ¶ 6, 504 P.2d 591 (1972)." 248 Kan. at 961-62.

In *U.S.D. No. 443 v. Kansas State Board of Education*, 266 Kan. 75, Syl. ¶ 1, 966 P.2d 68 (1998), the court stated that "[w]hen an administrative agency decision is appealed to the district court pursuant to K.S.A. 77-601 *et seq.*, and then appealed from the district court to this court, we review the administrative agency's decision as though the appeal has been made directly to us and we are subject to the same limitations of review as the district court."

Sokol argues he admitted SRS's summary of the facts solely for the purposes of his summary judgment motion and that SRS, therefore, could not use those facts against him in its motion for summary judgment and on appeal. We need look no farther than Sokol's motion for summary judgment. Sokol admits SRS's summary of the facts for the purpose of summary judgment. He then sets out facts in his argument that are not set out in SRS's summary of the facts.

Sokol admitted:

"The boy, Shlomo, was using language inappropriate for a child speaking to adults. He was refusing to obey his father. Mr. Sokol spanked the boy. The boy tried to

"flee and was hit in places not on his buttocks. The punishment left bruises which at the time of the report had already blackened, indicating the passage of time."

Sokol has admitted to acts which constitute a violation of K.S.A. 1998 Supp. 65-516(a)(3) within the meaning of the code for care of children and SRS rules and regulations. He admitted to intentionally striking his son by spanking him; that he hit his son in places other than the buttocks; and that his actions caused bruises which eventually blackened. This bodily injury, even if unintended, is sufficient, and the agency action is, therefore, affirmed.

Sokol maintains the question in the present case is what actions and injuries constitute "physical harm" or "physical injury" under the Kansas child protection statutes, and whether the facts of this case are sufficient to allow SRS to enter a determination under the applicable statutes that Sokol committed "abuse" of his son. Sokol claims his situation and the legal issue he presents is very close to that presented in *Paida v. Leach*, 260 Kan. 292, 917 P.2d 1342 (1996). He acknowledges that *Paida* dealt with a definitional analysis under the Protection from Abuse (PFA) Act, K.S.A. 60-3101 *et seq.*, but asserts this is inconsequential because the language in the PFA Act is identical to the language used in the criminal statutes dealing with child abuse, as well as the child protection statute, both of which apply to Sokol's situation. Sokol further contends that because no Kansas cases specifically address the definition of "physical injury"or "physical abuse," as used in the child protection statutes, the *Paida* case is authoritative for defining these words.

In conclusion, the allegations of abuse against Sokol were not brought under the PFA Act. Sokol's claim that the facts alleged in this case do not constitute abuse, as that term was interpreted in *Paida* and *Barnett v. Barnett*, 24 Kan. App. 2d 342, 945 P.2d 870 (1997), may be accurate, but this is not determinative of the outcome in this case, given that *Paida* and *Barnett* involve the PFA Act. This case involves an interpretation of abuse as that term is used in K.S.A. 1998 Supp. 65-516 and the administrative regulations which supplement it. The standard for what constitutes an act of abuse is broader in terms of appropriate conduct for an operator of, employee of, or volunteer in a child care facility or

family day care home than it is for behavior within a domestic unit. Although Sokol may not have perpetrated abuse of his son under the PFA Act, he nevertheless committed a violation under K.S.A. 1998 Supp. 65-516.

We have partially answered Sokol's argument concerning the use of his statements of fact in granting summary judgment earlier in this opinion. When Sokol appeared in the trial court, his counsel made it clear that the evidence he wanted to present went to his "intent at the time he did the acts, and the nature of the . . . abuse that they're alleging." We are satisfied the record contains sufficient admitted facts that could be properly considered for summary judgment purposes.

Affirmed.