(59 P.3d 6)
No. 88,331

MICHAEL N. PETERSON and PETERSON IRRIGATION, INC., *Appellees,* v. KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT, *Appellant.*

Opinion filed December 6, 2002.

*Yvonne C. Anderson,* of Kansas Department of Health and Environment, for appellant.

*Jason L. Reed* and *Kenneth W. Wasserman,* of Norton, Wasserman, Jones & Kelly, of Salina, for appellees.

Before GERNON, P.J., GREEN, J., and ROGG, S.J.

GERNON, J.: The Kansas Department of Health and Environment (KDHE) appeals the district court's reversal of a $15,000 fine imposed by KDHE on Michael N. Peterson and Peterson Irrigation, Inc., (Peterson) for violations of the Kansas Groundwater Exploration and Protection Act (KGEPA or the Act), K.S.A. 82a-1201 *et seq.*

## THE ACT

The KGEPA states that its purpose is to "provide for the exploration and protection of groundwater through the licensing and regulation of water well contractors . . . to protect the health and general welfare of the citizens of this state." K.S.A. 82a-1202.

The Act requires licensing of water well contractors and provides for the establishment of regulations and standards for well construction, reconstruction, treatment, and plugging. The Act requires water well contractors to keep a log of certain data and provide the log to the KDHE upon request. K.S.A. 82a-1202.

The Act further provides for penalties, both criminal (K.S.A. 82a-1214) and civil (K.S.A. 82a-1216), for violations of the Act or the rules and regulations related to the Act. Civil penalties of up to $5,000 per day per violation are allowed.

## FACTS

The space between the outside of a casing (or pipe) and the perimeter of a drilled hole in the earth is called the annular space. K.A.R. 28-30-2(o). Administrative regulations regarding water

wells require the annular space to "be sealed by grouting the annular space between the casing and the well bore from ground level to a minimum of 20 feet," or if a pitless well adapter (which diverts water laterally to a storage tank) is installed, "the grouting shall start below the point at which the pitless well adapter or unit attaches to the well casing and shall continue a minimum of 20 feet below this point . . . ." K.A.R. 28-30-6(b)(1). A natural substance called bentonite is commonly used to grout water wells.

Grouting the annular space is an important step in constructing a water well. As one witness in this case explained:

"Proper grouting is basically used to provide a seal between the bore hole and the exterior of the well casing. When you drill a water supply well, basically you're providing a direct conduit from the surface to the groundwater table and that's how the water enters the well. Typically, the bore hole is larger than the well casing, and what we attempt to do, since . . . a lot of contaminates originate on the ground surface is to make sure there is a seal that effectively blocks entrance of surface contaminates from entering the annular space between the well casing and the bore hole and use that annular space as a conduit to directly migrate down to the groundwater table."

If a well is improperly grouted, surface pollutants can migrate down the annular space and contaminate the groundwater.

Peterson employees drilled and installed the two wells in question here. Peterson furnished a log as required by K.S.A. 82a-1212, which certified that both wells had been properly grouted.

In 1999, Saline County health officials and KDHE staff partially excavated and inspected both wells. Their inspections revealed that although both wells contained some bentonite, the accepted grouting material, in their annular spaces, neither well was grouted to the required depth of 20 feet as had been stated in the construction logs. In addition, *e coli* bacteria were found in the water from one of the wells.

## ADMINISTRATIVE ACTION

In an administrative order, the Director of the Division of Environment of KDHE found that Peterson had committed four violations of the KGEPA for improperly grouting the two wells and for filing two inaccurate construction logs with KDHE. KDHE imposed a $20,000 civil penalty against Peterson.

Peterson received an adjudicative hearing before a KDHE presiding officer. After reading briefs filed by both parties and hearing testimony from many witnesses, the presiding officer reaffirmed the finding of four violations but reduced the civil penalty to $15,000 due to the apparent economic hardship Peterson would experience with a $20,000 penalty. Peterson filed a petition for review with the Secretary of KDHE, who issued a final order affirming the presiding officer's decision.

## DISTRICT COURT APPEAL

Peterson appealed to the district court. At the hearing, Peterson argued for the first time that K.S.A. 82a-1216(a) required KDHE to prove that Peterson's actions were willful in order to impose a civil penalty. The district court agreed with Peterson's statutory interpretation and found that there was no evidence Peterson willfully grouted the wells improperly or falsified the construction logs. The district court reversed KDHE's adjudication. KDHE appeals the district court's ruling.

## SCOPE OF REVIEW OF AGENCY ACTION

KDHE first complains that the district court disregarded its limited standard of review for an administrative appeal and reviewed the case de novo. In announcing its decision, the district court did declare that it was reviewing the ruling of KDHE de novo. The district court reiterated this statement in the journal entry as well.

The standard of judicial review of a state administrative agency adjudication is defined by the Kansas Judicial Review and Civil Enforcement of Agency Actions Act (KJRA), K.S.A. 77-601 *et seq.* See *National Council on Compensation Ins. v. Todd,* 258 Kan. 535, 538, 905 P.2d 114 (1995).

Appeals from an administrative adjudication are filed in the district court. K.S.A. 77-609(a). A district court may not substitute its judgment for that of an administrative tribunal. It is restricted to considering whether, as a matter of law; (1) the tribunal acted fraudulently, arbitrarily, or capriciously; (2) the administrative order was substantially supported by evidence; and (3) the tribunal's action was within the scope of its authority. See K.S.A. 77-621(c).

In reviewing a district court's decision reviewing an agency action, an appellate court must first determine whether the district court observed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as does the district court. *Hickman Trust v. City of Clay Center*, 266 Kan. 1022, 1036, 974 P.2d 584 (1999).

Neither the appellate court nor the district court may try the case de novo and substitute its judgment for that of KDHE. See *In re Certif. of Need App. by Community Psychiatric Centers, Inc.*, 234 Kan. 802, 806, 676 P.2d 107 (1984).

Peterson argues that shortly after making this misstatement, the district judge correctly stated the court's standard of review:

"[T]he scope of my review is not to make a different ruling from the facts as presented on the records, but to determine whether or not there is credible or competent evidence to support the burden of the Secretary that, in fact, the evidence existed for them to make the findings and conclusions and assess the fine that they did."

The district judge also said:

"The standard scope of review as counsel have adequately told the Court is, that either I can grant relief if I determine that the agency has erroneously interpreted or applied the law or the agency action is based on a determination of an act made or implied that is not supported by evidence that is substantial when viewed in the light of the record for judicial review."

The question for us in this type of appeal is to determine whether the district court substituted its judgment for that of the administrative agency or whether it ruled within the parameters of the well-recognized limitations for judicial review. Certainly, the agency here acted within the scope of its authority, and there is no suggestion it acted fraudulently, arbitrarily, or capriciously. Therefore, the only task left for the district court was to determine whether the order was substantially supported by the evidence.

## MUST VIOLATIONS BE WILLFUL ?

KDHE claims the district court erred in adopting Peterson's interpretation of the KGEPA's criminal and civil penalty statutes, which would require KDHE to prove that Peterson's violations of the KGEPA were willful or knowing. Once the district court

adopted Peterson's interpretation, it determined that there was no evidence that Peterson had willfully made misrepresentations in the construction logs and that there was little evidence that Peterson had willfully failed to properly grout the wells, since the bentonite present at both well sites indicated the bentonite had probably "bridged" and "slipped" in the annular space.

K.S.A. 77-621(c)(4) allows the district court to review an agency's interpretation or application of the law. The doctrine of operative construction declares that the interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute is entitled to judicial deference. While an appellate court should give deference to an agency's statutory interpretation, the appellate court has the final say in the construction of the statute. The agency's interpretation, although persuasive, is not binding on the appellate court. An appellate court's review of the construction of a statute is unlimited. *CPI Qualified Plan Consultants, Inc. v. Kansas Dept. of Human Resources*, 272 Kan. 1288, Syl. ¶ 3, 38 P.3d 666 (2002).

Peterson's statutory interpretation argument was raised for the first time at the district court level. The presiding hearing officer did not have the opportunity to address this argument. Subject to several exceptions not applicable here, K.S.A. 77-617 limits the issues that can be raised on appeal to those issues raised before the agency. We conclude, though we discuss the issue, that it was error for the district court to consider the statutory interpretation argument.

Peterson contends that the KGEPA's civil penalty statute found at K.S.A. 82a-1216(a) must be read in conjunction with the criminal penalty statute found at K.S.A. 82a-1214. K.S.A. 82a-1214 states:

"Any person who shall *willfully* violate any lawful rule or regulation of the secretary relating to water well contracting, or who shall engage in the business of constructing, reconstructing or treating water wells without first having obtained a license as in this act required, or who shall *knowingly* violate any provisions of this act, shall be guilty of a class B misdemeanor and subject to the penalties therefor as provided by law." (Emphasis added.)

Here, Peterson ignores a plain reading of 82a-1214. The willful reference, ignoring that 82a-1214 is not the civil penalty statute,

concerns violations of the rules or regulations for water well contracting. The balance of the paragraph references activity which is *knowingly* engaged in. We need not discuss the distinction between actual and constructive knowledge.

K.S.A. 82a-1216(a) states:

"Any person who violates any provision of the Kansas groundwater exploration and protection act, any rules and regulations adopted thereunder or any order issued by the secretary thereunder shall incur *in addition to other penalties* provided by law, a civil penalty not to exceed $5,000 for each violation. In the case of a continuing violation every day such violation continues shall be deemed a separate violation." (Emphasis added.)

Peterson claims that the phrase "in addition to other penalties" requires KDHE to prove that Peterson is guilty of a willful violation of the rules or regulations under K.S.A. 82a-1214 before it can impose a civil penalty under K.S.A. 82a-1216(a). Peterson is wrong.

Because 82a-1216 is a penal statute, the court should only use the normal and usual meaning of its words. See *State v. Zimmer*, 19 Kan. App. 2d 617, 619, 873 P.2d 1381 (1994).

The plain language of 82a-1216 does not require KDHE to prove that Peterson's actions were willful or knowing. The legislature could have easily included such language in 82a-1216 itself. The phrase "in addition to other penalties" indicates KDHE has a choice between seeking a criminal or civil penalty; it does not make a conviction a prerequisite to KDHE's imposition of a civil penalty.

KDHE directs us to *Radke Oil Co. v. Kansas Dept. of Health & Environment*, 23 Kan. App. 2d 774, 936 P.2d 286 (1997). In *Radke*, this court interpreted the Kansas Storage Tank Act, K.S.A. 65-34,100 *et seq*. The civil penalty statute in that act contains similar language to K.S.A. 82a-1216(a), stating: "Any person who violates any provisions of K.S.A. 65-34,109 . . . shall incur, *in addition to any other penalty* provided by law, a civil penalty in an amount of up to $10,000 for every such violation . . . ." (Emphasis added.) K.S.A. 65-34,113(a).

In *Radke*, the district court had ruled that because KDHE had never pursued a criminal conviction against Radke Oil Company, Inc., (Radke) under K.S.A. 65-34,109(a), it could not impose a civil penalty on Radke under K.S.A. 65-34,113(a). KDHE appealed the

district court's decision, asking the appellate court to find that the two statutes provided separate procedures for punishment and were not interdependent of one another.

This court reversed the trial court's decision, stating:

"The term 'in addition to,' by itself, does not require that another penalty be asserted. Rather, the legislature's use of the term 'in addition to' suggests that the legislature either contemplated or intended that parties would be liable for both civil and criminal penalties for violation of K.S.A. 65-34,109(a). However, 'in addition to' does not, by itself, create a condition precedent." 23 Kan. App. 2d at 777-78.

*Radke* also mentioned K.S.A. 82a-1214 and K.S.A. 82a-1216 in its analysis, but it did not draw any conclusions about its similar language. However, the court in *Radke* stated: "By changing K.S.A. 65-34,109(a) to a strict liability crime, the legislature lessened the burden on KDHE to establish, beyond a reasonable doubt, that an accused violated K.S.A. 65-34,109." 23 Kan. App. 2d at 779.

Similarly, K.S.A. 82a-1216 was added to the KGEPA in 1989 as "a supplement" to existing statutes, including K.S.A. 82a-1214. See K.S.A. 82a-1219. Like the Kansas Storage Tank Act, it appears the legislature wanted to ease the burden of proof on KDHE and make civil penalties a matter of strict liability.

Peterson argues that while *Radke* holds a criminal conviction is not a prerequisite, it does not address what KDHE must prove in order to impose a civil penalty. While Peterson acknowledges that KDHE does not have to prove a violation beyond a reasonable doubt to impose a civil penalty, Peterson maintains that KDHE must first prove Peterson's actions were willful. We conclude that the phrase "in addition to other penalties" in K.S.A. 82a-1216(a) does not require proof of any willful or knowing conduct.

KDHE was not required to prove that Peterson willfully or knowingly violated the KGEPA and its accompanying regulations. The district court's erroneous interpretation of the statute requires us to reverse.

## SUBSTANTIAL COMPETENT EVIDENCE

KDHE contends there was substantial competent evidence to support its adjudicative ruling. Peterson argues the opposite.

In its journal entry, the district court found that bridging and slippage explained why there was not 20 feet of grout in the annular area of the wells. The district court believed the evidence indicated that Peterson's failure to properly grout the wells was not knowing or willful. The district court also specifically found that Peterson did not willfully misrepresent its construction activities in the construction logs. Since we have ruled on the "willful" issue, we logically must conclude that these findings were error also.

We concluded above that willfulness is not a requirement for the imposition of civil penalties under K.S.A. 82a-1216(a). Peterson does not argue that KDHE's adjudication lacked substantial competent evidence for any other reason. Because an agency's action is presumed valid, the party challenging the conduct of an administrative agency has the burden to prove otherwise. K.S.A. 77-621(a)(1); *Fisher v. Kansas Dept. of SRS*, 271 Kan. 167, 175, 21 P.3d 509 (2001). This is true even when the agency is the appellant because the district court reversed the agency decision. See *Farmers Co-op Elevator v. Kansas Employment Security Bd. of Review*, 25 Kan. App. 2d 567, 573-74, 966 P.2d 699, *rev. denied* 266 Kan. 1108 (1998). We conclude that Peterson has not met the burden to prove that KDHE's decision was not supported by substantial competent evidence.

## FINE

The only question here is whether the imposition of a $15,000 fine was arbitrary and capricious. " 'The arbitrary and capricious test relates to whether a particular action should have been taken or is justified, such as the reasonableness of an agency's exercise of discretion in reaching a determination or whether the agency's action is without foundation in fact. [Citation omitted.]' " *Sokol v. Kansas Dept. of SRS*, 267 Kan. 740, 746, 981 P.2d 1172 (1999).

Furthermore, arbitrary or capricious conduct may be established where an administrative agency's order is not supported by substantial evidence. "Substantial evidence" is evidence which is both relevant and has substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Kennedy*

*v. Board of Shawnee County Comm'rs*, 264 Kan. 776, 783, 958 P.2d 637 (1998).

K.S.A. 82a-1216(a) states that the maximum civil penalty for each violation of the KGEPA is $5,000. Subsection (b) states that the civil penalty "shall constitute an actual and substantial economic deterrent to the violation for which assessed." These are the only guidelines regarding the amount of civil penalties found in the KGEPA or the administrative rules. KDHE argues that because the $15,000 fine was well within the statutory limits, the civil penalty could not have been arbitrary and capricious.

Peterson concedes that $15,000 constitutes a substantial economic deterrent but argues this penalty is unduly harsh in light of the evidence. Indeed, Richard Harper, an environmental geologist at KDHE who calculated the amount of the penalty, testified at the administrative hearing that in the 10 years he had been in the program, no other driller had been fined $20,000 for failing to properly grout water wells.

In *Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan. App. 2d 47, 913 P.2d 209 (1995), the defendant cable company argued that the trial court had abused its discretion by awarding excessive civil penalties under the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.* This court stated: "When the trial court could have awarded a civil penalty of up to $5,000, we do not think the award of $2,742 is excessive." 22 Kan. App. 2d at 52.

To calculate the penalty, KDHE used criteria stated in a Water Quality Guidance Memorandum. In this memorandum, there is a "matrix" containing variables which either increase or decrease the penalty amount. Peterson claims the variables in the matrix were incorrectly applied, resulting in a higher penalty than was warranted.

Although the KDHE was not obliged to use this matrix to calculate Peterson's civil penalty because it seemingly relates to the Water Supply and Sewage Act, K.S.A. 65-160 *et seq.*, it certainly provides some basis for a reasoned approach to accessing such penalties.

We conclude that the record supports the KDHE's fine here. It was within the statutory parameters and was not excessive. What

Peterson did or failed to do created a human health hazard which the Act in question is designed to discourage and prohibit. There is substantial evidence to support all of the agency's rulings, including the fine.

This matter is reversed, and the KDHE's findings, including the fines, are reinstated in their entirety.

Reversed.