NOT DESIGNATED FOR PUBLICATION

No. 120,324

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SANDRA TANNER,
*Appellant*,

v.

KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed October 18, 2019. Affirmed.

*Bruce Alan Brumley*, of Topeka, for appellant.

*Vincent M. Cox*, of Cavanaugh, Biggs & Lemon, P.A., of Topeka, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: Sandra Tanner, a former employee of the Topeka Metropolitan Transit Authority, applied for disability benefits from the Kansas Public Employees Retirement System (KPERS) after she was terminated. KPERS denied the claim, concluding that Tanner was not disabled under the terms of its Long-Term Disability Benefits Plan. An administrative law judge (ALJ) and the KPERS Board of Trustees affirmed the denial of Tanner's disability benefits, as did the district court. On appeal, Tanner argues that (1) KPERS's denial of her disability benefits was unreasonable, arbitrary, and capricious; (2) the decision was not supported by substantial evidence; and

1

(3) KPERS misapplied the terms of its disability plan to the facts of her case. Finding no error, we affirm.

FACTS

Tanner worked as a bus driver for the Topeka Metropolitan Transit Authority from 2002 to 2015. As an employee of the Transit Authority, Tanner was a member of KPERS. In 2006, Tanner was diagnosed with Graves' disease and had her thyroid removed sometime that year. In 2011, Tanner was diagnosed with fibromyalgia. In 2014, Tanner began working part-time, which amounted to about 16 to 20 hours per week.

As a bus driver, Tanner was required to have a commercial driver's license. To ensure that she met the relevant federal regulations, Tanner had a medical examination on March 3, 2015. Finette Gress, an advance practical registered nurse, examined Tanner and concluded that she qualified for a two-year driving certificate.

On September 21, 2015, the Transit Authority terminated Tanner's employment. Following her termination, Tanner filed a grievance with the Kansas Human Rights Commission. Tanner later testified that she filed the grievance because she "'felt [she] could still do the job.'"

In November 2015, Tanner saw Dr. Maire Fowler for complaints of muscle pain, fatigue, sleep difficulty, and morning stiffness. Fowler concluded that Tanner's complaints were related to her fibromyalgia.

On January 11, 2016, Tanner filed a claim for KPERS disability benefits. On the application, Tanner was asked to describe the onset and nature of her illness or injury. Tanner responded: "I developed [G]raves' [d]isease, and then Fibromya[lgia] in 2011." When asked what would have to change in order for her to return to work, Tanner wrote:

2

"Remission of a chronic illness." When asked to list any restrictions placed on her activities by a doctor, Tanner stated: "I can do anything I feel like doing. [T]he ramifications of it tire me and make my body hurt." Tanner described the following limitations on her activities: "Any task that is or has several steps to complete. I do[z]e or cannot stay on task."

Dr. Fowler prepared an attending physician statement that accompanied Tanner's disability claim. The doctor listed Tanner's subjective symptoms as "[e]xtreme fatigue, pain in muscles, morning stiffness." Dr. Fowler found that Tanner had a Class 4 physical impairment, which was described as a "[m]oderate limitation of functional capacity; capable of clerical/administrative (sedentary) activity (60-70%)." Dr. Fowler concluded that Tanner was "limited in sustained activity" and restricted her to sedentary activities.

In February 2016, Gress supplemented Tanner's attending physician statement. Gress identified Tanner's current level of work capacity as "[s]edentary-sitting, lifting/carry up to 10 pounds." Gress found that Tanner had "continued problems with being able to control symptoms of hypothyroid and fibromyalgia. The symptoms come and go. Worsen in some occasions." Accordingly, Gress concluded that Tanner could only sit continuously for a maximum of two hours, could continuously stand or walk for a maximum of one hour, and would need hourly breaks.

KPERS sent Tanner's disability claim to its third-party administrator, United Healthcare, for a determination on whether Tanner was entitled to long-term disability benefits under the KPERS disability benefits plan. A member was disabled under this plan when, on the date of disability, the member (1) was unable to perform the material and substantial duties of his or her usual occupation due to sickness or injury for the first 24 months for which benefits are paid or (2) was unable to perform the material and substantial duties of any gainful occupation due to sickness or injury after benefits have been paid for 24 months. After reviewing Tanner's available medical records, United

3

Healthcare determined that Tanner was not eligible for disability benefits. Specifically, United Healthcare reasoned:

> "There is no evidence of a significant change in your condition and/or subjective symptoms around the time you ceased working which would result in restrictions and/or limitations. The records show that you were not evaluated at the time you stopped working and there is no evidence that the treatment plan related to your thyroid condition, fibromyalgia or insomnia required a change.
>
> . . . .
>
> "Since there is no medical support for restrictions and/or limitations related to hypothyroidism, fibromyalgia or insomnia (or any other condition) which rise to a level of impairment that would preclude you from performing your occupation as a Bus Operator, you do not meet the definition of disability under the KPERS plan. Therefore, you are not eligible for benefits and your claim file has been closed."

United Healthcare issued a final benefits denial letter to Tanner on May 18, 2016. On January 1, 2017, Disability Management Services (DMS) took over as KPERS's third-party administrator. DMS reviewed Tanner's case record, which included additional medical records and deposition testimony, and confirmed that Tanner was not entitled to disability benefits.

Tanner appealed KPERS's decision to deny her disability benefits, and the parties appeared before an ALJ for a hearing on September 25, 2017. The parties presented testimony from Tanner and Mary Beth Green, KPERS's Chief Benefits Officer, as well as numerous medical records and other exhibits. After reviewing this evidence and considering oral argument from the parties, the ALJ issued a written decision affirming KPERS's denial of disability benefits. The ALJ concluded that "the greater weight of evidence establishes that appellant is able to perform the material and substantial duties of her regular occupation as well as other occupations." In reaching this conclusion, the ALJ made the following relevant findings:

4

- The functional job analysis listed the physical requirements for performing the duties of a Transit Authority Bus Operator and summarized a bus operator's physical job demands to include "occasional maximum horizontal push/pull force of 80 lbs; occasional maximum vertical push force of 30 lbs; occasional maximum grip force of 40 lbs; occasional forward reach; occasional overhead reach; frequent hand coordination; continuous sitting and occasional standing/walking."

- There was no testimony or other evidence that a Transit Authority Bus Operator was required to lift anything, other than applying force to get a manual wheelchair onto a 1-inch thick metal platform. In addition, there was no evidence that a push/pull force of a certain weight was equivalent to lifting that same amount of weight.

- Tanner testified as to her belief that she could continue performing her job and admitted that her condition had not changed since her March 2015 medical exam that found she was fit to be a bus driver.

- Tanner's social media postings demonstrated that she had an active lifestyle, which included housework, yardwork, shopping, crafting, garage sales, furniture repair and sales, animal care, and volunteer work.

- The ALJ personally witnessed Tanner sitting for far longer than 15 minutes at a time and did not require an hourly break during the five-hour hearing.

- In 2010, Tanner falsified medical information and records to obtain sick leave from work. As a result, Tanner was suspended from work for two days and Cotton O'Neil Clinic discontinued its medical care relationship with her.

- The ALJ found that Tanner's credibility was "significantly diminished" given her 2010 falsification of medical records. The ALJ also found that Tanner's medical evidence was likewise unreliable given that the medical authorities appeared to be influenced by Tanner's claims about her symptoms.

- KPERS carefully reviewed and corroborated Tanner's medical records.

After the KPERS Board of Trustees summarily affirmed the ALJ's ruling, Tanner filed a petition for review with the district court. Specifically, Tanner alleged that (1) the ALJ's decision was unreasonable, arbitrary, or capricious because it ignored basic medical definitions in defining Tanner's employment capabilities; (2) the ALJ failed to consider certain evidence detracting from its decision; and (3) the ALJ misapplied the terms of the KPERS disability benefits plan to Tanner's circumstances.

Following its review of the record and consideration of written argument from the parties, the district court affirmed the denial of Tanner's claim for disability benefits. In doing so, the district court held that the ALJ did not act unreasonably, arbitrarily, or capriciously in denying Tanner's claim by ignoring basic medical terms related to her condition. Rather, the court found that the ALJ considered several different factors which ultimately discredited Tanner's assertion that she was unable to perform her duties as a bus driver and that she was unable to gain employment elsewhere due to her medical restrictions. In addition, the court determined that the ALJ's decision was supported by substantial evidence in the record. Finally, the court dismissed Tanner's legal argument that the ALJ misapplied the terms of the KPERS plan as a factual dispute that was contrary to the record. Tanner timely appeals.

ANALYSIS

A. *Standard of review*

Unless an agency is specifically exempted, the Kansas Judicial Review Act (KJRA) defines the scope of judicial review of agency actions. K.S.A. 2018 Supp. 77-603(a); see K.S.A. 77-606 (stating that subject to this provision, the KJRA "establishes the exclusive means of judicial review of agency action"). When reviewing an administrative action under the KJRA, a court shall grant relief only when it determines that the agency violated one or more of the provisions listed in K.S.A. 2018 Supp. 77-

6

621(c)(1)-(8). *Bluestem Telephone Co. v. Kansas Corporation Comm'n*, 52 Kan. App. 2d 96, 107, 363 P.3d 1115 (2015). Tanner, as the party asserting the agency's action is invalid, bears the burden of proving the invalidity on appeal. See K.S.A. 2018 Supp. 77-621(a)(1); *In re Equalization Appeal of Wagner*, 304 Kan. 587, 597, 372 P.3d 1226 (2016). Appellate courts exercise the same statutorily limited review of the agency's action as does the district court, as though the appeal had been made directly to the appellate court. *In re Tax Appeal of Fleet*, 293 Kan. 768, 776, 272 P.3d 583 (2012).

Tanner argues, as she did below, that she is entitled to relief under three subsections of K.S.A. 2018 Supp. 77-621(c): (1) because the ALJ's denial of her claim was arbitrary, capricious, or "otherwise unreasonable," K.S.A. 2018 Supp. 77-621(c)(8); (2) because the ALJ's denial of her claim is not supported by substantial evidence, K.S.A. 2018 Supp. 77-621(c)(7); and (3) because the ALJ "erroneously interpreted or applied the law," K.S.A. 2018 Supp. 77-621(c)(4), by misapplying the terms of the KPERS disability benefits plan to the facts of her case. We address each of Tanner's arguments in turn.

### 1. *Unreasonable, arbitrary, or capricious*

Tanner asserts that the ALJ's denial of her claim for disability benefits was unreasonable, arbitrary, and capricious.

A court must presume the validity of an agency action and cannot substitute its judgment for that of the administrative agency unless the action is unlawful, unreasonable, arbitrary, or capricious. *Sierra Club v. Mosier*, 305 Kan. 1090, 1113, 391 P.3d 667 (2017).

> "'The arbitrary and capricious test relates to whether a particular action should have been taken or is justified, such as the reasonableness of an agency's exercise of discretion in reaching a determination or whether the agency's action is without foundation in fact. Arbitrary or capricious conduct may be shown where an administrative order is not

7

supported by substantial evidence.' [Citations omitted.]" *Sokol v. Kansas Dept. of SRS*, 267 Kan. 740, 746, 981 P.2d 1172 (1999).

Tanner argues that in denying her claim for disability benefits, the ALJ ignored her medical restrictions, the job requirements of a Transit Authority Bus Operator, and how those restrictions and requirements related to each other. Tanner contends that the ALJ's finding that her sedentary work and 10-pound lifting restrictions did not translate into an inability to perform the heavy lifting required of a bus operator is "simply nonsensical."

Contrary to Tanner's argument, however, the record reflects that the ALJ fully considered Tanner's medical restrictions and the job requirements of a bus operator in concluding that Tanner was not entitled to disability benefits. The ALJ noted that despite Tanner's diagnoses of Graves' disease in 2006 and fibromyalgia in 2011, she continued to work for the Transit Authority until her termination in September 2015 and had met all relevant physical standards necessary for a two-year renewal of her commercial driver's license in March 2015. The ALJ further noted that Tanner denied her medical condition had changed since the March 2015 exam and that Tanner filed a grievance about her termination in 2015 because she "'felt [she] could still do the job.'"

The ALJ reviewed in detail the specific sedentary medical lifting restrictions placed on Tanner after the March 2015 physical examination, as well as the functional job analysis requirements of a bus operator, which included maneuvering a wheelchair over a 1- or 2-inch edge of a metal platform. At the hearing, the ALJ asked both parties whether push/pull force, vertical push force, or grip force could be translated into a correlating measurement of lift force, but neither party was able to answer this question. Because there was no evidence as to how lift force correlated to a requirement of horizontal push/pull force, the ALJ concluded there was no basis to conclude that Tanner could not perform the job of a bus operator.

The ALJ further found that Tanner—the only witness to testify on her behalf at the hearing—lacked credibility, given her falsification of medical records in 2010. In turn, the ALJ questioned the reliability of the various medical opinions recommending the sedentary lifting restrictions given those opinions relied significantly on Tanner's subjective complaints about her symptoms. And despite Tanner's assertions that she could not sit for long periods of time and was required to take hourly breaks, the ALJ personally observed that during the five-hour hearing, Tanner stood only twice to walk around the courtroom, sat for longer than 15 minutes at a time, and did not require hourly breaks. The ALJ concluded that Tanner's claims were not only unsupported by her conduct at the hearing, but also her "active personal life" as reflected on social media. See K.S.A. 2018 Supp. 77-621(d); *Kotnour v. City of Overland Park*, 43 Kan. App. 2d 833, 837, 233 P.3d 299 (2010) (courts must consider credibility determinations made by hearing officer who personally observed demeanor of witness).

In sum, the ALJ did not ignore Tanner's medical restrictions or the job requirements of a bus operator when it determined that she was not disabled under the terms of the KPERS plan. To the contrary, the ALJ extensively reviewed the medical restrictions and job requirements and found that Tanner's claim of disability lacked support in the record and was otherwise discredited by Tanner's own testimony and actions. The ALJ's decision was not unreasonable, arbitrary, or capricious. The district court did not err in so finding.

### 2. *Substantial evidence*

Tanner argues that the ALJ's order is not supported by substantial evidence.

A court may reverse an agency's determination of fact only when the determination "is not supported to the appropriate standard of proof by evidence that is

substantial when viewed in light of the record as a whole." K.S.A. 2018 Supp. 77-621(c)(7). "'[I]n light of the record as a whole'" is statutorily defined as meaning:

> "[T]hat the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 2018 Supp. 77-621(d).

Although not statutorily defined, "substantial evidence" refers to "'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.'" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015).

In support of her assertion that the ALJ's ruling is not supported by substantial evidence, Tanner alleges the ALJ did not consider the following evidence, which she asserts detracts from its findings:

- Two doctors' recommendations imposing sedentary and lifting restrictions and prohibiting heavy work.
- The Transit Authority job requirement of heavy lifting.
- Tanner's testimony describing the heavy lifting she did.
- Tanner's testimony that maneuvering wheelchairs required over 100 pounds of exertion.
- The plain language of the KPERS disability benefits plan stating that an individual is entitled to benefits if the individual is unable to perform his or her job.

10

Tanner's argument is essentially an invitation to reweigh the evidence, which we cannot do. See K.S.A. 2018 Supp. 77-621(d). As previously discussed, the ALJ reviewed and considered Tanner's medical restrictions, the functional job analysis requirements of a bus operator, and the KPERS disability benefits policy. The ALJ also questioned Tanner as to whether push/pull force could be translated into a correlating lift force, but she could not provide a definitive answer to this question. The ALJ ultimately concluded that there was no evidence from which to conclude that Tanner could not perform the job duties of a bus operator. The ALJ further determined that the medical professionals' restrictions were discredited by Tanner's lack of credibility and the subjective nature of her symptoms, and were not consistent with the ALJ's personal observations of Tanner at the hearing or her active lifestyle depicted on social media. Based on our review of the record as a whole, we find substantial evidence to support the ALJ's conclusion that Tanner was not disabled under the terms of the KPERS disability benefits plan.

3. *Erroneous interpretation or application of the KPERS disability benefits plan*

Finally, Tanner claims the ALJ erroneously interpreted or applied the law by misapplying the terms of the KPERS disability benefits plan to the facts of her case.

The interpretation and legal effect of a written instrument are matters of law over which appellate courts have unlimited review. In conducting this unlimited review, we give no deference to the agency's or the district court's interpretation. See *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900-01, 220 P.3d 333 (2009).

KPERS's Long-Term Disability Plan provided that a member was entitled to long-term disability benefits if the individual met one of the following requirements:

"**Own Occupation Period**. For the first 24 months for which benefits are paid, the member is unable to perform the material and substantial duties of his or her regular occupation due to sickness or injury.

"**Any Occupation Period**. After benefits have been paid for 24 months, the member is unable to perform the material and substantial duties of any gainful occupation due to sickness or injury."

Tanner argues the uncontroverted medical evidence in this case demonstrates that she is unable to perform the job requirements of a bus operator, which include "heavy" work that requires maneuvering up to 80 pounds in weight. As a result, Tanner claims the ALJ erred in determining that she was not entitled to disability benefits under the KPERS plan.

But as earlier stated, there is substantial evidence to support the ALJ's finding that Tanner was not disabled under the terms of the KPERS plan. Specifically, the ALJ found that the medical opinions recommending Tanner's activities be restricted lacked credibility and that there was otherwise no evidence in the record to support a finding that Tanner could not perform the job duties of a bus operator. The ALJ properly applied the terms of the KPERS disability benefits plan to the circumstances present here. The district court did not err in determining that Tanner is not entitled to relief on this basis.

Affirmed.