(67 P.3d 156)

No. 88,132

STATE OF KANSAS, *Appellee*, v. MICHAEL D. LIEBAU, *Appellant*.

Opinion filed April 25, 2003.

*Kiehl Rathbun*, of Wichita, for the appellant.

*Lesley A. Isherwood*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before KNUDSON, P.J., BRAZIL, S.J., and BUCHELE, S.J.

BRAZIL, J.: Defendant Michael D. Liebau appeals his convictions for one count of sexual exploitation of a child and two counts of eavesdropping. He argues that there was insufficient evidence to

support his conviction for exploitation of a child as charged, that K.S.A. 2002 Supp. 21-3516 (a)(2) is unconstitutionally overbroad, and that he was legally authorized to videotape his children in the bathroom.

We affirm his convictions for eavesdropping and reverse his conviction for sexual exploitation of a child.

Liebau and his wife, Jamie, had an 8-year-old son, J.L. Jamie's 16-year-old daughter, J.H., also lived with Liebau and Jamie in a four-bedroom house. Liebau had his own bedroom and an office on the second floor of the couple's house. Liebau kept a TV and VCR in his bedroom. J.H. and J.L. each had their own bedroom in the basement, and they shared a bathroom in the basement.

In December 1999, Jamie found a videotape in Liebau's bedroom showing her daughter J.H. in the bathroom undressing. Jamie discovered a video camera hidden in the wall of the children's bathroom and removed the camera from the wall. When she confronted Liebau about the video camera, he told her that all guys like to look at young girls and that it was a natural thing since J.H. was not his daughter. Jamie ordered Liebau to smash the video camera with a hammer, and she recorded over the videotape so J.H. would not find it. Liebau apologized to Jamie and assured her that he would never do it again.

However, less than 6 months later, Jamie found another videotape showing J.H. naked in the bathroom and another video camera in the bathroom wall. She removed the video camera from the wall and took the videotape and the camera to her office.

In August 2000, Liebau refused to allow J.H. in the house after she got home from work. Jamie reached around Liebau at the door and allowed J.H. to enter the house. Because Jamie scratched Liebau when she let J.H. in, Liebau called the police. When the police arrived, Jamie informed them of the videotape and the video cameras. The next day, Jamie took the videotape and the two video cameras she had confiscated to the police station.

Liebau was initially charged with six counts of sexual exploitation of a child and two counts of eavesdropping. The State reduced the charges to one count of sexual exploitation of a child and two counts of eavesdropping. Following a bench trial, Liebau was convicted

of all three charges and sentenced to 32 months in prison and 12 months in jail. Liebau appeals.

Liebau argues that the State charged him with sexual exploitation of a child pursuant to K.S.A. 2002 Supp. 21-3516(a)(1) and that there was insufficient evidence to support a conviction under that subsection of the statute. Essentially, Liebau is seeking the reversal of his conviction on a technical defect in the information and the journal entry, which referenced K.S.A. 2002 Supp. 21-3516(a)(1).

Sexual exploitation of a child is defined in K.S.A. 2002 Supp. 21-3516(a)(1) as promoting any sexual performance of a child, whereas, as applied to this case, K.S.A. 2002 Supp. 21-3516(a)(2) pertains to the possession of a videotape of a child "shown . . . engaging in sexually explicit conduct."

The amended information against Liebau stated:

"COUNT THREE
"MICHAEL D. LIEBAU did then and there unlawfully possess a videotape in which J.L.H., a real child . . . , and J.H.L. a real child . . . , [are] shown . . . engaging in sexually explicit conduct, . . . .

. . . .

"Contrary to Kansas Statute Annotated 21-3516[a](1), Sexual Exploitation of a Child, Severity Level 5, Person Felony, Count Three."

Although the State's amended information identified K.S.A. 2002 Supp. 21-3516(a)(1), the description of the offense was clearly for K.S.A. 2002 Supp. 21-3516(a)(2). An error in the citation to the statute does not require reversal of a conviction if the defendant is not prejudiced. *State v. McQueen*, 12 Kan. App. 2d 147, 736 P.2d 947 (1987). Liebau was not prejudiced in this case. The information clearly stated he was charged with the possession of a videotape, not promoting any sexual performance of a child. Liebau, in fact, understood that he was charged with a violation of K.S.A. 2002 Supp. 21-3516(a)(2). In his motion to dismiss, Liebau stated that he was "charged under K.S.A. 2000 Supp. 21-3516(a)(2)."

Although the amended information identifies 21-3516(a)(1) as the statute that Liebau violated, the language of the amended information charges Liebau with a violation of 21-3516(a)(2). Lie-

bau's alleged technical error does not require the reversal of his conviction.

Liebau next argues the trial court erroneously denied his motion for a new trial because the nudity on the videotape is not within the narrow construction set forth in *State v. Zabrinas*, 271 Kan. 422, 24 P.3d 77 (2001). The *Zabrinas* court held that K.S.A. 21-3516 was not overbroad because of the phrase "exhibition in the nude." 271 Kan. at 432. Zabrinas argued the phrase would include any visual forms of nude children. The Kansas Supreme Court, however, differentiated between sexually explicit conduct and what it termed as a "harmless moment." 271 Kan. at 431. To be sexually explicit, the *Zabrinas* court stated that it is "necessary that the child must have some understanding or at least be of an age where there could be some knowledge that they are exhibiting their nude bodies in a sexually explicit manner." 271 Kan. at 431. The *Zabrinas* court also focused on the connection between the nude depiction and the intent " 'to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender.' " 271 Kan. at 431 (quoting K.S.A. 21-3516[a][2]).

The court also looked at the phrase "sexually explicit conduct." See K.S.A. 2002 Supp. 21-3516 (b)(1), which states:

" 'Sexually explicit conduct' means actual or simulated: Exhibition in the nude; sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex; masturbation; sado-masochistic abuse for the purpose of sexual stimulation; or lewd exhibition of the genitals, female breasts or pubic area of any person."

The court noted that the phrase "exhibition in the nude" is related to and part of the entire definition of sexually explicit conduct. 271 Kan. at 432. The court then referred to the maxim *noscitur a sociis*, which was defined in *Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, Syl. ¶ 3, 528 P.2d 134 (1974), as:

" 'The ancient and well known maxim *noscitur a sociis*, literally "it is known from its associates," is a common sense aid to the construction of doubtful language. Its effect is that the meaning of a word or phrase which may be obscure or doubtful when considered in isolation may be clarified or ascertained by reference to those words or phrases with which it is associated. It simply means that,

taken in context, a word may have a broader or narrower meaning than it might have if used alone." *Zabrinas*, 271 Kan. at 432.

As we consider the phrase "exhibition in the nude" in the context of the entire definition of "sexually explicit conduct," we must conclude that it means more than mere nudity. Webster's Dictionary defines "exhibit" as: "1. To show externally: DISPLAY. 2. a. To present for public view. b. To show or enter in an exhibition or contest." Webster's II New Riverside University Dictionary 452 (1984).

While we can assume under the facts of this case that Liebau made and possessed the videotapes with the intent to arouse or satisfy his sexual desires or appeal to his prurient interest, the nudity depicted on the videotape is that of a child in a "harmless moment." Clearly, a 16-year-old girl, unaware that she is being videotaped in the nude while using the bathroom, cannot be said to be engaging in sexually explicit conduct or an exhibition of nudity.

"These canons of statutory construction are to be considered in light of other cautionary rules. While courts must give effect to legislative intent and the plain language of a statute, courts may not " 'delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, *if it did not in fact do it, under any reasonable interpretation of the language used,* the defect is one which the legislature alone can correct.' " *Kenyon v. Kansas Power & Light Co.*, 254 Kan. 287, 292-93, 864 P.2d 1161 (1993) (quoting *Harris v. Shanahan*, 192 Kan. 183, 196, 387 P.2d 771 [1963])." *State v. Patterson*, 25 Kan. App. 2d 245, 248, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

Finally, Liebau argues that his convictions for eavesdropping must be reversed because he had authority to enter the children's bathroom as a parent. Liebau relies on *Sokol v. Kansas Dept. of SRS*, 267 Kan. 740, 981 P.2d 1172 (1999), and *Paida v. Leach*, 260 Kan. 292, 917 P.2d 1342 (1996), to support his proposition that parents have lawful authority to enter a child's bathroom against the child's wishes. His reliance on those cases overlooks the case holdings and takes dicta completely out of context.

*Paida* defines "bodily injury" in the context of K.S.A. 60-3102(a) of the Protection from Abuse Act. 260 Kan. at 301. *Sokol* interprets

"abuse" as used in K.S.A. 65-516. 267 Kan. at 747. Neither case addresses the limits of parental authority within a family home.

K.S.A. 2002 Supp. 21-4001 provides:

"(a) Eavesdropping is knowingly and *without lawful authority*:

"(1) Entering into a private place with intent to listen surreptitiously to private conversations or to observe the personal conduct of any other person or persons therein;

. . . .

"(b) A 'private place' within the meaning of this section is a place where one may reasonably expect to be safe from uninvited intrusion or surveillance, but does not include a place to which the public has lawful access." (Emphasis added.)

Liebau argues that a parent has superior rights to those of a child and that those superior rights are unlimited. Kansas law, however, does not support Liebau's argument that the superiority of parental rights is unlimited.

Kansas recognizes that parents have a fundamental Constitutional right to the custody and control of their children. *In re Guardianship of Williams*, 254 Kan. 814, 819-20, 869 P.2d 661 (1994); *In re Brooks*, 228 Kan. 541, 548, 618 P.2d 814 (1980); *In re J.L.*, 20 Kan. App. 2d 665, 671, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995). However, Kansas courts have also recognized limitations on a parent's Constitutional right to parent. The multitude of parental termination cases clearly demonstrate the State's ability to limit parental rights. When parenting crosses the line of physical, emotional, or sexual abuse, the State has the duty *in parens patriae* to step in and protect children. K.S.A. 38-1501 *et seq.* The Kansas Supreme Court stated:

" 'We readily agree that parental rights are not to be considered lightly, and this court has always been diligent in their protection. (*Swarens v. Swarens*, 78 Kan. 682, 97 Pac. 968; *Pinney v. Sulzen*, [91 Kan. 407, 137 Pac. 987], supra.) However, when the welfare of a child so demands, the rights of its parents must yield to the paramount right of their offspring to receive proper parental care, guidance and control. Where such be the case, the state, in the rightful exercise of its power as *parens patriae*, has the duty to intervene on behalf of the child in furtherance of its legitimate interests.' [Citations omitted.]" *Brooks*, 228 Kan. at 549 (quoting *In re Armentrout*, 207 Kan. 366, 485 P.2d 183 [1971]).

The United States Supreme Court has also held that parental rights are not unlimited. In *Prince v. Massachusetts*, 321 U.S. 158,

166, 88 L. Ed. 645, 64 S. Ct. 438 (1944), the Court stated that "neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as *parens patriae* may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways."

The parties have not cited, nor have we found, any case law either in Kansas or any other state or federal jurisdiction regarding a parent's authority to secretly videotape his or her children. However, there is case law regarding a parent's authority to audiotape phone conversations between his or her children and third parties (generally the other parent) and the parent's authority to authorize a search of a child's bedroom or belongings. Although these cases can be distinguished both factually and legally, the cases are instructive for policy reasons.

The first line of cases concerns a parent's right to consent to the search of a child's bedroom or belongings. Some state courts have recognized that parents have authority to consent to the search of a minor child's bedroom and belongings. See, *e.g.*, *Taylor v. State*, 491 So. 2d 1042 (Ala. Crim. App. 1986); *Vanderberg v. Superior Court*, 8 Cal. App. 3d 1048, 87 Cal. Rprt. 876 (1970); *State v. S.B.*, 758 So. 2d 1253 (Fla. Dist. App. 2000). These courts focus on the parents' responsibilities for discipline, training, and control of their children and the superior rights attendant to those responsibilities.

The second line of cases deals with the application of the federal Electronic Communications Privacy Act of 1986, part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §2510 *et. seq.* (2000), and similar state statutes which prohibit the interception, recording, and introduction into evidence of telephone communications. Courts have recognized that parents can vicariously consent to the recording of their children's phone conversations to avoid application of these statutes. See, *e.g.*, *Pollock v. Pollock*, 154 F.3d 601 (6th Cir. 1998); *Scheib v. Grant*, 22 F.3d 149 (7th Cir. 1994); *Campbell v. Price*, 2 F. Supp. 2d 1186 (E.D. Ark. 1998); *Thompson v. Dulaney*, 838 F. Supp. 1535 (D. Utah 1993); *Silas v. Silas*, 680 So. 2d 368 (Ala. Civ. App. 1996); *State v. Diaz*, 308 N.J. Super 504, 706 A.2d 264 (1998). Most of

these opinions specifically limit the parent's ability to vicariously consent on behalf of their children to situations where the parents have a good faith concern for the child's best interests. *Pollock*, 154 F.3d at 608-10; *Scheib*, 22 F.3d at 154; *Campbell*, 2 F. Supp. 2d at 1191; *Thompson*, 838 F. Supp. at 1543-44; *Silas*, 680 So. 2d at 371-72.

These cases are instructive for establishing a policy from which this case can be decided. The first line of cases acknowledges that parental rights can be superior to children's rights, especially in light of the parents' responsibilities for the care and upbringing of their children. The second line of cases demonstrates the courts' willingness to accept that superiority with limitations. The *Silas* court clearly stated that the limitation is dependent on a parent's "good faith basis that is objectively reasonable for believing that the minor child is being abused, threatened, or intimidated. . . ." 680 So. 2d at 371. Because parents have the responsibility for raising their children, the State must acknowledge that parental rights may be superior to their children's rights. However, the State may limit the superiority of a parent's rights to situations where a parent has a good faith basis that is objectively reasonable for believing he or she must abridge the child's rights in furtherance of his or her duties as a parent.

Applying that policy to this case, if a parent has a good faith basis that is objectively reasonable for believing it is in the child's best interests, the parent has the authority to enter a child's bathroom, whether physically or electronically. In other words, the parent's right to enter is based on the purpose of the entry.

Here, Liebau failed to establish a good faith basis that was objectively reasonable for entering J.L.'s and J.H.'s bathroom. Although Liebau testified he was concerned that J.H. was using drugs, the trier of fact did not find Liebau's stated purpose to be credible. On the contrary, Liebau told Jamie that "all guys like to look at young girls, and that (J.H.) was not his daughter and that it was just a natural thing." Accordingly, Liebau's convictions for eavesdropping are upheld because he did not have lawful authority for observing the children's private conduct.

Affirmed in part and reversed in part.