(87 P.3d 348)
No. 88,421

STATE OF KANSAS, *Appellee,* v. EDWARD N. COBURN, SR.,
*Appellant.*

Opinion filed April 9, 2004.

*Stephen B. Chapman*, of Chapman & White, L.L.C., of Olathe, for appellant.

*Bonnie Hannan*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before JOHNSON, P.J., MARQUARDT and GREENE, JJ.

GREENE, J.: Edward Coburn appeals his convictions of three counts of aggravated indecent liberties with a child (J.W.), three counts of aggravated indecent liberties with a second child (S.W.), and one count of sexual exploitation of a child. He frames 11 specific points of error and cumulative error. We reverse and remand for new trial due to a clearly erroneous jury instruction, and we attempt to narrow issues for remand.

*Factual and Procedural Overview*

S.W. and J.W. are minor granddaughters of Coburn's wife, Rose. The girls lived with their mother, C.W., about 2 blocks from the home of Coburn. The girls would frequent Coburn's home, sometimes for parties, during which Coburn would play "tickling games" with the girls, according to Rose. At some point, C.W. became suspicious that something was wrong. Specifically, the girls told her that Coburn was touching them on their bottom and making comments about their chests. After her suspicions were aroused, C.W. did not permit further contact.

Unfortunately, her intervention apparently came too late. After S.W. had trouble at school, she confided to her mother that Coburn had put his hand in her pants. J.W. was then questioned and ulti-

mately stated that Coburn had also touched her. C.W. then reported these matters to the police.

On March 19, 2000, Coburn reported for work at the Apple Market quite early and was seen shortly thereafter leaving with a satchel under one arm. The safe was found unlocked, and the receipts from the previous business day were missing. When Rose awakened that morning, she found a note from Coburn stating, in part:

"My leaving is going to be the best for everyone. Since everytime I do something I am being accused of doing something like [J.W.] and [S.W.]. I AM NOT A child molester. . . . At least I'll have fun the last years of my life—the money will help me settle down—I am sorry honey it didn't work out. Love, Ed."

In order to investigate where Coburn might have gone, C.W. and her husband went to Coburn's computer the day after he left and found a train schedule that showed a stop in Las Vegas, and they also found pornography involving young girls. When they reported the pornography to the authorities, the computer was seized.

S.W. and J.W. both testified at trial. S.W. testified that she first met Coburn before he moved to Kansas, and that in the summer of 1998, Coburn touched her in her genital area. After Coburn moved to Kansas, S.W. recalled one incident that occurred in the basement of Rose's house where Coburn touched her with his hand in her genital area, and she recalled two such incidents that occurred in the living room of Rose's house. She also saw Coburn touch her sister, J.W. J.W. testified that Coburn would begin the physical contact by tackling and then tickling her, but he would then move his hands to the area of her genitals. She recalled at least three incidents where Coburn either made his clothed genital area have contact with her or he tried to touch her genital area with his hand.

The testimony of S.W. and J.W. was corroborated by other girls who had attended the parties or been present at Rose's house and observed Coburn's conduct. These witnesses testified as to their observations but also testified regarding conversations they had with J.W. wherein J.W. told of Coburn's inappropriate conduct in "stick[ing] his hand inside her pants" or "down to her vagina."

The State called FBI computer specialists to describe what was found on Coburn's computer. Over the objection of the defense, some of the names of the websites were listed, including "Sexhound," "Teenysex," "Teen-eroticism.com/yteens," and "Lolitas-nude-young.com." When a sampling of the documents saved on Coburn's hard drive was printed, among the documents were 20 photos of young, unclothed girls. An expert pediatrician and director of child abuse services at the Kansas University Children's Center testified that the girls in at least five of the photos were under the age of 18.

The jury found Coburn guilty of all charges, and he was sentenced to a controlling term of 228 months' imprisonment. He then perfected this appeal.

*The Trial Court Erred in Instructing the Jury that Coburn's Flight Could be Considered in Determining Guilt.*

The State requested a separate instruction on flight pursuant to *State v. Moffitt*, 199 Kan. 514, 431 P.2d 879 (1967), *overruled in part on other grounds. State v. Underwood*, 228 Kan. 294, 615 P.3d 153 (1980). Coburn objected to the instruction, but the State told the trial court that there were a number of cases since *Moffitt* holding that the flight instruction is proper. The court overruled the objection and gave the following instruction:

"If you find from the evidence that the defendant, soon after the commission of the offenses alleged in the information, fled to avoid arrest and trial, you may take that fact into consideration in determining his guilt or innocence. His flight, if he did flee, is not sufficient in itself to establish guilt, but a circumstance which you may consider in determining the probabilities of his guilt or innocence. The weight to which that circumstance is entitled is a matter for the Jury to determine in connection with all the facts brought out in the case."

Both the State and the defense failed to cite for the trial court or for this court on appeal the controlling authority of *State v. Cathey*, 241 Kan. 715, 730-31, 741 P.2d 738 (1987), which departed from *Moffitt* and held that such a flight instruction is clear error.

"The purpose of instructing the jury is to guide the jurors in their deliberations and to aid them in arriving at a legally proper verdict. It is the trial judge's duty

to explain to the jury the law of the case and to point out the elements necessary to be proved by the State in a criminal case. Instructions which are erroneous and misleading can constitute grounds for a new trial. *When instructing a jury, a trial judge may not single out and give undue emphasis to particular evidence, even though the instruction states the correct principle of law.*

"It is *clearly erroneous* for a judge to instruct the jury on a defendant's consciousness of guilt by flight, concealment, fabrication of evidence, or the giving of false information. Such an instruction singles out and particularly emphasizes the weight to be given to that evidence by the jury. The flight instruction was clearly a grave departure from the accepted form. By giving the flight instruction, the trial judge violated the *McCorgary* prohibition. This violation and other trial errors require that Cathey's conviction be reversed and the case be remanded for a new trial in accordance with this opinion." (Emphasis added.)

The instruction disapproved in *Cathey* was nearly identical to that at issue in this appeal. This instruction no longer appears in PIK, and was apparently removed sometime after the *Cathey* decision. We find it curious if not misleading for the prosecution to have been unaware of *Cathey* but to suggest that "a number of cases" since *Moffitt* held the instruction proper. The instruction employed was specifically disapproved by our Supreme Court more than 15 years ago, and the rationale for prohibiting such an instruction is that it emphasizes and singles out certain evidence rather than leaving to the jury the significance and weight of all evidence presented. See *State v. McCorgary*, 218 Kan. 358, 365, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976).

This court is duty bound to follow controlling Supreme Court precedent, absent some indication that the court is deviating from its prior holding. *State v. Horn*, 20 Kan. App. 2d 689, 692, 892 P.2d 513, *rev. denied* 257 Kan. 1094 (1995). The State cites no indication of an impending deviation from *Cathey*, and we know of none. Based upon this ground alone, we have no alternative other than to reverse Coburn's conviction.

*The Convictions for Six Counts of Aggravated Indecent Liberties With a Child are Supported by Sufficient Evidence.*

Because we have decided that the instruction error requires a reversal, we must also address Coburn's sufficiency of the evidence arguments. A reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permis-

sible under the Double Jeopardy Clause. *State v. Pabst*, 268 Kan. 501, 512, 996 P.2d 321 (2000) *cert. denied* 123 S. Ct. 384 (2002).

Coburn argues the State presented insufficient evidence to sustain the jury convictions of aggravated indecent liberties with a child as to J.W. and S.W. The following standard of review applies:

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review on appeal is whether, after review of all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Davis*, 275 Kan. 107, 118, 61 P.3d 701 (2003).

Aggravated indecent liberties with a child is defined in part at K.S.A. 21-3504(a)(3)(A) as engaging in any of the following acts with a child who is under 14 years of age: "Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." Here, the trial court—consistent with Kansas Supreme Court precedent—defined "lewd fondling or touching" as follows:

"The term 'lewd fondling or touching' means a fondling or touching in a manner which tends to undermine the morals of the child, which is so clearly offensive as to outrage the moral senses of a reasonable person, and which is done with the specific intent to arouse or satisfy the sexual desires of either the child or the offender or both. Lewd fondling or touching does not require contact with the sex organ of one or the other."

See *State v. Wells*, 223 Kan. 94, 98, 573 P.2d 580 (1977).

We have conducted a comprehensive review of the evidence in support of Counts I-VI, and conclude that there was more than adequate evidence to support conviction for at least six separate incidents of aggravated indecent liberties. The victims testified to at least six incidents where Coburn either touched them in their genital areas or touched them with his genital area, and this testimony was corroborated by three neighbor girls or friends, the girls' mother, and two social workers. Although Coburn complains that the girls often employed vague terminology in referring to parts of their anatomy, the girls described the areas as: (i) the part of the body used "to go to the bathroom"; (ii) "inside her pants"; (iii) "down past my bellybutton"; and (iv) "vagina." We disagree that

this evidence was too "vague," especially since lewd fondling or touching does not require contact with the sex organ of one or the other. *Wells*, 223 Kan. at 97-98. We are convinced that a rational factfinder could have found Coburn guilty of all six counts of aggravated liberties with a child, as defined by K.S.A. 21-3504(a)(3)(A), beyond a reasonable doubt.

*The Conviction for Sexual Exploitation of a Child is Supported by Sufficient Evidence.*

Coburn also challenges the sufficiency of the evidence on his conviction for sexual exploitation of a child, K.S.A. 2003 Supp. 21-3516(2), although the challenge is made within his claim of error for an improper joinder of charges. The joinder issue will not be considered because it is raised for the first time on appeal.

Coburn argues that the evidence was insufficient for exploitation because the photos possessed within his computer "are of nude females engaged in no sexually explicit activity." He cites *State v. Zabrinas*, 271 Kan. 422, 431, 24 P.3d 77 (2001), for the proposition that "a child or infant in a harmless moment could never be considered to be [engaged in sexually explicit conduct]."

Our court had occasion to apply *Zabrinas* in *State v. Liebau*, 31 Kan. App. 2d 501, 67 P.3d 156 (2003), where a conviction for sexual exploitation of a child was reversed because the video made and possessed was of a 16-year-old girl who was completely unaware that she was being videotaped by her father. The court reasoned:

"As we consider the phrase 'exhibition in the nude' in the context of the entire definition of 'sexually explicit conduct,' we must conclude that it means more than mere nudity. Webster's Dictionary defines 'exhibit' as: '1. To show externally: DISPLAY. 2. a. To present for public view. b. To show or enter in an exhibition or contest.' Webster's II New Riverside University Dictionary 452 (1984).

"While we can assume under the facts of this case that Liebau made and possessed the videotapes with the intent to arouse or satisfy his sexual desires or appeal to his prurient interest, the nudity depicted on the videotape is that of a child in a 'harmless moment.' Clearly, a 16-year-old girl, unaware that she is being videotaped in the nude while using the bathroom, cannot be said to be engaging in sexually explicit conduct or an exhibition of nudity." 31 Kan. App. 2d at 505.

We embrace this discussion in *Liebau* and note that the photos possessed by Coburn did not depict models who were "unaware"

of the camera, but rather were clearly posing for the camera. These photos depicted "exhibition in the nude" because they were more than mere nudity—the models posed for display or public view, just as the court in *Liebau* defined the phrase. For this reason, Coburn's sufficiency challenge to the conviction for sexual exploitation of a child is rejected.

Given our conclusions that the flight instruction was clearly erroneous and that the convictions were supported by sufficient evidence, we remand for new trial. We discuss additional claims of error only to narrow the issues and to assist the parties and trial court on remand.

*The Trial Court Did Not Err in Defining "Sexually Explicit Conduct" As Including "Exhibition in the Nude."*

Coburn objected at trial to an instruction defining "sexually explicit conduct" because it included the phrase "exhibition in the nude" within the definition. Coburn argues on appeal that the phrase should have been removed "to comply with the narrowing of the statute by the *Zabrinas* court." See *Zabrinas*, 271 Kan. at 426-33. We disagree that *Zabrinas* "narrowed" 21-3516 or required removal of a phrase expressly utilized in the statutory definition.

In *Zabrinas*, the court faced squarely a constitutional challenge to 21-3516, specifically, whether the phrase "exhibition in the nude" made the statute overbroad because it could include innumerable nonsexual depictions of child nudity, which are common in the media, the arts, and homes of Kansas citizens. The court upheld the statute, stating:

"We construe the language to apply only to those situations when a child has been employed, used, persuaded, induced, enticed, or coerced into the nude display of the statutorily defined areas while engaging in sexually explicit conduct, also as statutorily defined, for purposes of appealing to the sexual desires or the prurient interest of the offender, the child, or another. The statute prohibits anyone from possessing a visual depiction of a child engaged in this type of conduct. The phrase 'exhibition in the nude' does not make the statute unconstitutionally overbroad."

We do not understand the court in *Zabrinas* to disapprove the statutory phrase "exhibition in the nude"; moreover, the court's

discussion of constitutionality did not address appropriate jury instructions, and certainly did not direct trial courts to alter the statutory definition for these purposes. The jury instruction in question tracks the statutory language, and Coburn's argument therefore fails.

*The Trial Court Did Not Err in Its Unanimity Instruction.*

Coburn challenges the court's unanimity instruction on appeal even though his attorney at trial argued in favor of the unanimity instruction and did not object to the specific language used. Generally, a party may not claim error in the failure to give an instruction without first objecting thereto, unless such failure is clearly erroneous. K.S.A. 2003 Supp. 22-3414(3). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. *State v. Evans,* 270 Kan. 585, 588, 17 P.3d 340 (2001).

The following principles guide this court's analysis:

"When reviewing challenges to jury instructions, we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citation omitted.]" *State v. Mitchell,* 269 Kan. 349, 355, 7 P.3d 1135 (2000).

The court in Instruction No.17 gave the following unanimity instruction.

"The State claims distinct multiple acts which each could separately constitute the crime of Aggravated Indecent Liberties with a Child. In order for the defendant to be found guilty of *any of the counts,* you must unanimously agree upon the same underlying act." (Emphasis added.)

Coburn complains of the emphasized language in the preceding quotation and argues that the jury could have believed that the same underlying act would be sufficient to support all of the counts. The court, however, also instructed the jury with Instruction No. 8 that each count was a separate and distinct offense:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it,

uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime must be stated in a verdict form signed by the Presiding Juror."

Coburn begins his argument with an analysis of *State v. Hill*, 271 Kan. 929, 26 P.3d 1267 (2001). *Hill* has limited usefulness in this case because it contains the analytical framework for cases where the unanimity instruction is not given. Here, the instruction was given and the error claimed is one of language used.

Coburn too narrowly focuses on Instruction No. 17 without considering the other instructions, especially Instruction No. 8. See *Mitchell*, 269 Kan. at 355. Instruction No. 8 told the jury that each charge is a separate and distinct offense, and that the evidence may support some of the counts but not others. The jury would have to ignore Instruction No. 8 to believe that evidence of the same act could support all the counts.

Coburn suggests the court should have substituted the language of "aggravated indecent liberties with a child" in the place of "any of the counts" in the instruction, which would result in the following: "In order for the defendant to be found guilty of aggravated indecent liberties with a child, you must unanimously agree upon the same underlying act." This instruction would have been unsatisfactory because it would have suggested to the jury that it must convict Coburn of all counts or none at all. The State persuasively argues that Coburn's proposed instruction ignores the fact that there were multiple counts of aggravated indecent liberties charged. Because multiple counts of aggravated indecent liberties with a child were charged in this case, the court was required to avoid this result by inserting the language "any of the counts."

Coburn's reading of the instructions is entirely unreasonable. The court's instructions properly and fairly stated the law, and the jury could not reasonably have been misled by them. Coburn's argument is rejected.

*The Trial Court Did Not Err in Admitting Evidence of the Vulgar Names of Websites Visited by Coburn.*

Coburn argues the court erred in admitting evidence of the vulgar names of websites he visited because that evidence was not

relevant and unduly prejudicial. The admission and exclusion of evidence lies within the sound discretion of the trial court. Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Leitner*, 272 Kan. 398, 408, 34 P.3d 42 (2001). Generally, all relevant evidence is admissible. K.S.A. 60-407(f). Relevant evidence is "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401. "Relevancy is more a matter of logic and experience than of law. Evidence is relevant if it renders the desired inference more probable than it would be without the evidence or if it has any tendency in reason to prove any material fact." *State v. Wimbley*, 271 Kan. 843, 853, 26 P.3d 657 (2001). Where the probative value, however, is substantially outweighed by the risk of unfair prejudice, relevant evidence may be excluded. *Leitner*, 272 Kan. at 415.

As an element of sexual exploitation of a child, the State had to prove that Coburn possessed the images with an intention to "arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another." K.S.A. 2003 Supp. 21-3516(2). The vulgar names of the websites had probative value for this element. They were especially probative given Coburn's argument that the images on his computer's hard drive were innocent pictures. The names of the websites, however, belie his claims that the images were innocent. We find no abuse of discretion in the admission of this evidence.

*The Trial Court Did Not Err in Admitting Evidence of Theft, Flight, and Prior Crimes.*

Coburn argues that evidence of his theft and flight, and evidence of uncharged allegations of sexual misconduct, were improperly admitted by the trial court contrary to K.S.A. 60-455. The State argues the evidence of the theft and flight and of the uncharged allegations was admissible under the doctrine of res gestae.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to

K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The following must be satisfied for evidence to be admitted under K.S.A. 60-455: The trial court must find that (1) the evidence is relevant to prove one of the facts specified in the statute; (2) the fact is a disputed, material fact; and (3) probative value of the evidence outweighs its potential prejudice. *State v. Rucker*, 267 Kan. 816, 824, 987 P.2d 1080 (1999).

Res gestae evidence is admissible despite the prohibition of K.S.A. 60-455:

"Evidence that has a direct bearing on, and a relation to, the commission of an offense is admissible without a limiting instruction and is not rendered inadmissible because it may disclose other or independent offenses. The law allows the admission of evidence as part of the res gestae of acts made before, during, or after the principal event. [Citation omitted.] If the evidence is a part of the res gestae of the offenses for which a defendant is being tried, such evidence may be introduced independent of K.S.A. 60-455. [Citation omitted.]

"Acts done or declarations made before, during, or after the happening of the principal fact may be admissible as part of the res gestae where they are so closely connected with it as to form in reality a part of the occurrence. Evidence that does not constitute a portion of the crimes charged is admissible if there are some natural, necessary, or logical connections between the evidence and the inference or result which it is designed to establish. [Citation omitted.]" *State v. Spresser*, 257 Kan. 664, 667-68, 896 P.2d 1005 (1995).

Res gestae evidence can be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." *State v. Edwards*, 264 Kan. 177, 200, 955 P.2d 1276 (1998).

On appeal, the admissibility of prior crimes is reviewed under an abuse of discretion standard. *Rucker*, 267 Kan. at 823. Discretion is abused only when no reasonable person would take the view adopted by the trial court. 267 Kan. at 823. Coburn bears the burden of proving the abuse of discretion. See 267 Kan. at 823. "Wide latitude is given to the district court in determining whether evidence constitutes part of the res gestae." *Edwards*, 264 Kan. at 200.

## Flight and Theft

While the flight instruction, as discussed above, was clearly er-

roneous, the admissibility of that evidence was not. See *State v. Bowman*, 252 Kan. 883, 891, 850 P.2d 236 (1993) ("This court has held evidence of flight or attempted flight is admissible to establish the defendant's consciousness of guilt.") Once it is established that evidence of the flight itself was admissible, it follows that the evidence of the theft was not in error, since the theft was necessarily inextricably connected to the flight. Without the money, the flight would not have been possible. We find no abuse of discretion in admitting this evidence.

## Additional Incidents Involving S.W. and J.W.

Coburn also complains, without citing any specific authority, that the trial court erred in admitting evidence that he touched S.W. and J.W. on more than three occasions. The Kansas Supreme Court recently addressed the issue of continuous conduct between an adult and a child in a similar context in *State v. McHenry*, 276 Kan. 513, 78 P.3d 403 (2003). The evidence of additional uncharged incidents of sexual touching is admissible to " 'establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness to the act charged,' " independent of K.S.A. 60-455. 276 Kan. at 520 (quoting *State v. Crossman*, 229 Kan. 384, 387, 624 P.2d 461 [1981]).

Here, the evidence of additional incidents involving J.W. and S.W. was admissible to establish the continuing relationship between Coburn and the girls, to show the continuing course of conduct between Coburn and the girls, and to corroborate the girls' stories. The evidence is particularly relevant given Coburn's assertion that his tickling and wrestling with the girls was harmless. The evidence buttresses S.W.'s and J.W.'s testimony that the wrestling was not innocent, but was rather designed to facilitate Coburn's inappropriate touching. We find no abuse of discretion in admitting this evidence.

## Additional Incidents Involving L.C.

L.C. specifically testified that when Coburn touched her, he did it while pretending to be "wrestling around." This evidence was

admissible under K.S.A. 60-455 as evidence of Coburn's plan. J.W. and S.W. consistently testified that Coburn would touch them while pretending to be wrestling around. Coburn himself admitted to wrestling with the girls. To prevent the jury from believing that the wrestling was an innocent game, the State was entitled to admit evidence to show that Coburn engaged in similar acts with other girls with similar results. See *State v. Clements,* 252 Kan. 86, 90, 843 P.2d 679 (1992) (finding a pattern of approach to seducing young boys that is "similar enough to show a common approach that is tantamount to a plan"); *State v. Damewood,* 245 Kan. 676, 679-80, 783 P.2d 1249 (1989) (permitting evidence of prior use of beekeeping ruse to engage boy in sexual activity). We find no abuse of discretion in admitting this evidence.

*Remaining Claims of Error*

Coburn's remaining claims of error, including his constitutional challenges, merit no discussion at this time since resolution of these issues would be of little or no assistance to the trial court on remand and consideration of the constitutional issues prior to remand is not necessary to serve the interests of justice or to prevent a denial of fundamental rights. See *State v. Mason,* 268 Kan. 37, 39, 986 P.2d 387 (1999).

Reversed and remanded for new trial.

JOHNSON, J., concurring: I concur with the majority but write separately to express my frustration with the K.S.A. 60-455 issue. Judge Greene has taken the hand of cards dealt to him by our mandatory precedent and played them well. However, declaring the other crimes evidence to be part of the res gestae and thus admissible independent of 60-455 to show one of the eight material facts specifically listed in the statute strikes me as so contrived that I experience a sensation akin to fingernails on a blackboard.

Reading K.S.A. 60-455 in a vacuum, stripped of prior interpretations and attempts to convert its provisions into a mathematical formula, I perceive, perhaps naively, a simple rule. In the criminal context, the State cannot present evidence that a defendant committed a specific bad act on another occasion solely to establish a

bad character propensity as proof that the defendant must have committed the currently charged crime, *i.e.*, defendant did bad before, therefore defendant must have done bad now. However, the statute continues, if the other bad act is relevant to the current crime, it is admissible.

Perhaps unfortunately, the drafters of the statute included exemplars of material facts to which the other crime evidence might be relevant. Notwithstanding the statutory word "including," judicial interpretation has declared that to be admissible the other crime has to be relevant to one or more of the eight material facts specifically listed in the statute, *i.e.*, the list is exclusive. *State v. Bly*, 215 Kan. 168, 175, 523 P.2d 397 (1974). Thus, other crime evidence relevant to the current prosecution is nevertheless excluded if it cannot be fit into one of the illustrative facts. Predictably, relevancy to some of the listed facts, notably intent and plan, have been considerably broadened.

*Bly* also imposed a jury instruction requirement on other crime evidence:

"Generally in every case where evidence of other crimes is admitted solely under the authority of 60-455 the trial court should give an instruction limiting the purpose for which evidence of the similar offense is to be considered. [Citations omitted.] It should be noted, however, that where evidence disclosing another criminal offense has a direct bearing on and relation to the commission of the offense itself, it is admissible without a limiting instruction. [Citation omitted.] Stated in another way, it is not prejudicially erroneous for the trial court to fail to give a limiting instruction on the purpose of evidence of other crimes when the challenged evidence is admissible independently of K.S.A. 60-455. [Citation omitted.]" 215 Kan. at 176.

Since then, case law has mandated reversal if evidence admitted solely under K.S.A. 60-455 is not accompanied by a limiting jury instruction. *State v. Whitehead*, 226 Kan. 719, 722, 602 P.2d 1263 (1979).

Our courts have utilized *Bly's* reference to independently admissible other crimes evidence to develop a parallel universe of reasons that prior crimes evidence can be admitted without reference to the statutory list of "exclusive" material facts. See, *e.g.*, *State v. Clark*, 261 Kan. 460, 471, 931 P.2d 664 (1997) (res gestae

evidence relevant to motive, intent, and absence of mistake); *State v. Jones*, 247 Kan. 537, 547, 802 P.2d 533 (1990) (to establish relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged). As noted in the majority opinion, res gestae evidence must show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." *State v. Edwards*, 264 Kan. 177, 200, 955 P.2d 1276 (1998). These are the same material facts illustrated in 60-455. However, if the evidence is labeled "res gestae," it is declared admissible independently of 60-455 and independently admissible evidence requires no limiting instruction. See *State v. Wilson*, 247 Kan. 87, 97, 795 P.2d 336 (1990).

I confess to being incapable of comprehending the distinction between statutorily admissible evidence "relevant to prove some other material fact" of the current crime under K.S.A. 60-455, and independently admissible evidence having "a direct bearing on and relation to the commission of the offense itself" under *Bly*. 215 Kan. at 176. The evidence is either relevant to a specific fact in the current prosecution or it is offered to invoke character propensity reasoning. See Comment, *Other Misconduct Evidence: Rethinking Kansas Statutes Annotated Section 60-455*, 49 Kan. L. Rev. 145, 146 (2000). A plain reading of K.S.A. 60-455 excludes the character propensity reasoning evidence but allows the relevant evidence.

Fortunately, in this instance, under any analysis, the evidence of which Coburn complains was admissible. I would prefer to be able to consider the issue based on determining whether the only relevancy of the evidence was to establish character propensity. However, the current judicially created rules do not permit such a straightforward analysis.