NOT DESIGNATED FOR PUBLICATION

No. 122,968

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL JOSEPH FLOREZ SR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed December 23, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Daniel O. Lynch*, special prosecutor, of Johnston, Eisenhauer, Eisenhauer & Lynch, LLC, of Pratt, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., HILL and ISHERWOOD, JJ.


BUSER, J.:  Michael J. Florez Sr. appeals his convictions for aggravated assault and disorderly conduct. Florez contends the State failed to present sufficient evidence for a rational fact-finder to find him guilty beyond a reasonable doubt. Upon our review of the complaint, jury instructions, and all the trial evidence in a light most favorable to the State, we are convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt of both crimes charged in the complaint and as set forth in the elements instructions provided to the jury. Finding no error, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

This case arose from a physical altercation between Florez and Rocky Patterson on May 11, 2018. As a result, Florez was charged with aggravated assault and disorderly conduct. A jury trial was held wherein the following evidence was presented.

In the early afternoon, Patterson, the rodeo coach at Pratt Community College, was herding cattle from a nearby off-campus field to the on-campus rodeo arena. To accomplish the move, Patterson parked his pickup truck and trailer at an intersection near the field to keep the calves on the proper path to the arena. Patterson's son, Caden, and Pratt Community College student, Courtney Hobert, assisted Patterson. At trial, Patterson acknowledged that several cars stopped and turned around upon seeing Patterson's truck blocking the roads.

According to Patterson, as he was standing just inside the gate to the field, he saw a car driving towards him from the west. Patterson motioned to the car and the driver, Florez, pulled up near the gate where the cattle were crossing. Florez' wife was a passenger in the car. Florez began honking his horn, which frightened the cattle and caused them to run back into the field from where Patterson was moving them. Annoyed at Florez' honking, Patterson told him, "Back the [expletive] up." Florez parked his car with the engine running, jumped out, walked around the front of his car, and entered the field where Patterson was standing.

Patterson testified that Florez walked up to him, bumped him with his chest and yelled, "You're not going to talk to me like that in front of my wife." Patterson bumped Florez back with his own chest as a "reflex," whereupon Florez swung at Patterson with his right fist. Florez missed. Each man took another swing at the other without striking the other one, although Patterson conceded that he may have "grazed" Florez with one of his punches.

2

Patterson shoved Florez away, whereupon Florez produced a knife with the blade exposed, which Patterson testified he was "waving" around. According to Patterson, Florez threatened him by saying, "You want some of this?" Patterson testified that Florez threatened to stick the knife into Patterson.

Patterson testified that given the escalating situation he walked backwards from Florez even though Florez stopped advancing. According to Patterson, he did this because he believed Florez might use the knife against him unless he backed away. Patterson told Florez that if he did not leave, he would call the police. Patterson then called the police, and Florez never left the scene.

Hobert and Caden testified that Patterson's truck and trailer were completely blocking the roadway. After Hobert heard honking, she saw Florez get out of his car and shove Patterson. Hobert saw several punches thrown and Florez holding the knife while Patterson backed away. After the incident, Hobert heard Florez say he was only trying to help move the calves. Hobert later told police officers that she heard Patterson swear at Florez and say, "If you want to fight, let's fight."

Officer Finice Jon McCarley of the Pratt Police Department testified that when he arrived, he asked Florez where the knife was and Florez showed him the knife and placed it on the ground as instructed. A photograph of the knife was admitted in evidence.

Patterson informed Officer McCarley that he told Florez to back up. Officer McCarley noted that Patterson's truck and trailer were blocking the roadway. Officer McCarley also spoke with Florez who told him Patterson struck him in the neck and showed him a spot on his neck where he was struck. Officer McCarley observed a red spot on Florez' neck. Florez told the officer that he kept the knife at his side and that he wanted to press charges against Patterson. Officer McCarley testified that he arrested Florez, however, because he believed Florez to be the "primary aggressor."

3

At the close of the State's case-in-chief, Florez moved for a directed verdict which was denied.

Florez testified in his own defense. He stated he and his wife were running errands when they encountered Patterson's truck and trailer blocking the roadway. According to Florez, when he pulled up closer to the cattle, one of them approached the front of his car so he "beeped" his horn to keep the animal near the others. Florez denied trying to scare the cattle. Florez testified that Patterson was waving at him, so he rolled his car window down. According to Florez, Patterson said, "What the [expletive] you doing?" Florez replied, "Excuse me?" Patterson then said, "You heard me. Back the [expletive] up."

Florez stated he became scared and had no way around the truck and trailer. He decided to get out of his car to speak to Patterson. According to Florez, Patterson told him, "If you want to fight, let's fight." Florez described what happened next:

> "The next thing I know, he threw a punch that landed on the right side of my face and my neck, which at that time when he struck me, I fell, but I didn't fall on my ass. I didn't fall on my butt. I was able to keep my footing and get back up. I got back up. There was now at least 20 to 30 feet between us. I grabbed for my knife and opened it. He stopped dead in his tracks."

Florez denied he was waving the knife around or that he advanced towards Patterson holding the knife. He said he produced the knife so Patterson would stop and that the knife had that desired effect. Florez testified that he was afraid Patterson may have a knife or a gun, although he never saw one.

A jury convicted Florez of aggravated assault and disorderly conduct. Florez filed a timely motion for judgment of acquittal under K.S.A. 22-3419 and for a new trial under K.S.A. 22-3501. Both motions were denied. He was sentenced to 12 months in the custody of the Secretary of Corrections for the aggravated assault and a concurrent 30

4

days in the county jail for the disorderly conduct, but he was granted 36 months' probation.

Florez timely appeals.

ANALYSIS

On appeal, Florez contends there was insufficient evidence at trial to support his convictions for aggravated assault and disorderly conduct. He presents a multi-faceted argument. First, he notes that as to both charges in the State's complaint, the State charged him with intentional conduct when both charges should have been properly charged with a *knowing* rather than an *intentional* culpable mental state. By mistakenly charging that the crimes were committed intentionally, however, Florez asserts the State was required to prove this greater culpable mental state at trial. Florez notes that the jury instructions correctly provided that the State was required to prove only that both crimes were committed knowingly not intentionally. As a result, Florez does not claim that the trial evidence was insufficient to prove the crimes as their elements were listed in the jury instructions or Kansas statutes, but he asserts "the evidence produced at trial was insufficient to prove the crimes *as they were charged*." (Emphasis added.) Florez also challenges the sufficiency of evidence presented by the State regarding other elements of both crimes.

We begin the analysis with our standard of review:

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

5

"Except as otherwise provided, a culpable mental state is an essential element of every crime defined by this code. A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'" K.S.A. 2017 Supp. 21-5202(a). Thus, the requisite culpable mental state is established by the Legislature in the criminal statutes.

At the outset, it is uncontroverted that in charging Florez as to both crimes, the State erroneously indicated that the crimes were committed with an *intentional* state of mind. It is also true that the jury instructions setting forth the elements of each crime properly informed the jury that a *knowing* state of mind was necessary to prove that Florez committed both crimes.

For the crime of aggravated assault in Count I, the State alleged in the complaint that Florez "unlawfully, feloniously, willfully and *intentionally* place[d] another, to wit: ROCKY D. PATTERSON, in reasonable apprehension of immediate bodily harm, committed with a deadly weapon, to wit: KERSHAW POCKET KNIFE." (Emphasis added.) Below that language, the State listed the charge as "Aggravated Assault" under K.S.A. 2017 Supp. 21-5412(b), a severity level 7 person felony. The language of this charge mistakenly included the word "intentionally" rather than "knowingly."

Jury Instruction No. 3 correctly advised the jury of the several elements of aggravated assault with a deadly weapon and informed the jury that "[t]o establish this charge, each of the following claims must be proved." The first element was: "The defendant *knowingly* placed Rocky Patterson in reasonable apprehension of immediate bodily harm." (Emphasis added.) The second element was that the defendant did so with a deadly weapon. Instruction No. 3 also explained the legal definition of a "deadly weapon" and "knowingly." In particular, the jury was informed, "A Defendant acts 'knowingly' when the Defendant is aware of the circumstances in which he was acting or that his conduct was reasonably certain to cause the result complained about by the

6

State." This jury instruction was derived from PIK Crim. 4th 52.010 (2015 Supp.) and PIK Crim. 4th 54.280.

Under K.S.A. 2017 Supp. 21-5412(b)(1): "Aggravated assault is assault, as defined in subsection (a), committed: (1) With a deadly weapon." Under subsection (a), "[a]ssault is knowingly placing another in reasonable apprehension of immediate bodily harm." K.S.A. 2017 Supp. 21-5412(a). In short, the district court's elements instruction for aggravated assault properly conformed to Kansas statutes and the PIK elements instruction.

Similarly, for the crime of disorderly conduct in Count II, the State alleged in the complaint that Florez "unlawfully and *intentionally* engage[d] in brawling or fighting when [Florez] [knew or should have known], that engaging in said brawling or fighting [would] alarm, anger or disturb others or provoke an assault or other breech [*sic*] of the peace." (Emphasis added.) Below that language, the State listed the charge as "Disorderly Conduct" under K.S.A. 2017 Supp. 21-6203(a)(1), a class C nonperson misdemeanor. The language of this charge mistakenly included the word "intentionally" rather than "knowingly."

Jury Instruction No. 4 correctly advised the jury of the elements of disorderly conduct and informed the jury that "[t]o establish this charge, each of the following claims must be proved." The first element read: "The defendant engaged in brawling or fighting." The second element stated: "The defendant knew or should have known that his conduct would alarm, anger, or disturb others or provoke an assault or other breach of the peace." Jury Instruction No. 4 also repeated the legal definition of "knowingly" as set forth in jury Instruction No. 3 pertaining to Aggravated Assault. This instruction was derived from PIK Crim. 4th 52.010 (2015 Supp.) and PIK Crim. 4th 62.030.

Under K.S.A. 2017 Supp. 21-6203(a)(1): "Disorderly conduct is [brawling or fighting] that the person knows or should know will alarm, anger or disturb others to provoke an assault or other breach of the peace." In short, the district court's elements instruction for disorderly conduct properly conformed to Kansas statutes and the PIK elements instruction.

The proposed elements instructions were discussed with both counsel at the beginning and conclusion of the trial. After voir dire but before opening arguments, the district judge discussed the two elements instructions:

> "[DEFENSE COUNSEL]:  I believe they're in line with the PIK instructions, just with the knowing and the intent. Did it have the intent added?
> "THE COURT:  I took the intent out because neither instruction has used the words 'intentional.' Both have 'know' or 'knowing' in it. That's the reason I used those. . . .
> "[PROSECUTOR]:  I'm fine with both of those.
> "DEFENSE COUNSEL:  I have no objection to either of those at this moment, Your Honor."

The jury was then instructed at the start of trial regarding the elements instructions agreed to by the parties. At the conclusion of the trial evidence, the district court again inquired of both counsel regarding the elements instructions and neither counsel had any objection. The elements instructions were provided to the jury.

Florez does not favor us with any precedent wherein a Kansas appellate court has adopted his legal argument that the evidence produced at trial must be sufficient to prove the crimes "as they were charged" in the complaint. Our research has revealed no such precedent. On the other hand, we are aware of cases that require evidence produced at trial to sufficiently prove the crimes charged in the complaint. The difference is more than semantics. Florez predicates his argument on the claim that the State must prove the

8

crime as it was worded or described in the complaint. But Kansas law only requires the State to prove the crime charged, not prove the crime in the way that it was charged.

In *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018), our Supreme Court was presented with an insufficiency of evidence claim based on whether "the State proved the crime it charged." As explained by our Supreme Court, Fitzgerald was charged with aggravated criminal sodomy of a child under 14 years of age by causing the child, C.C., "to engage in oral copulation *with another person* in violation of K.S.A. 2017 Supp. 21-5504(b)(2) and (c)(3)." (Emphasis added.) 308 Kan. at 660. At trial, however, "all parties thereafter proceeded with the case as though Fitzgerald had been charged with engaging in sodomy *with C.C. himself*." (Emphasis added.) 308 Kan. at 660. See K.S.A. 2017 Supp. 21-5504(b)(1) ("[s]odomy with a child who is under 14 years of age"). 308 Kan. at 660-61. The elements instruction provided to the jury similarly set forth the elements for aggravated criminal sodomy of a child under 14 years of age pursuant to K.S.A. 2017 Supp. 21-5504(b)(1). 308 Kan. at 662-63.

On appeal, Fitzgerald argued there was insufficient evidence to prove the crime charged in the complaint because the State had not proven the elements of the subsection of the crime charged but had proven the elements of a different subsection of the crime charged. Our Supreme Court agreed with Fitzgerald, reversing his conviction because under K.S.A. 2017 Supp. 21-5504(b)(2), "[t]his *statute* 'demands a specific kind of proof from the State.'" (Emphasis added.) 308 Kan. at 666 (citing *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 [2015]).

Justice Luckert (now, Chief Justice Luckert) in a concurring opinion in *Fitzgerald* framed the proper analysis to be used in determining whether trial evidence was sufficient in relation to the State's charge in the complaint:

9

> "Resolving the question of whether the State presented sufficient evidence of the crime of aggravated sodomy as charged under K.S.A. 2017 Supp. 21-5504(b)(2) depends on what the State had to prove. In turn, the determination of what the State had to prove depends on *the elements of the crime defined by that statute*." (Emphasis added.) 308 Kan. at 667 (Luckert J., concurring).

We are persuaded that Justice Luckert's analytical approach is appropriate in this case and other cases wherein a defendant raises an insufficiency of evidence issue based on the variance between the State's proof and the crime charged in the complaint. Here, Florez was charged in the complaint with aggravated assault and disorderly conduct. The question then becomes, did the State prove at trial the charges of aggravated assault and disorderly conduct which were alleged in the complaint? Contrary to Florez' analytical formulation, the question is not whether the State proved at trial the charges of aggravated assault and disorderly conduct *as they were phrased* in the complaint, but whether the State proved the elements of the crimes charged *as defined by Kansas statutes*. See 308 Kan. at 667 (Luckert J., concurring).

Our court has considered an argument similar to the one raised by Florez in *State v. Ricke*, No. 119,854, 2020 WL 2781698 (Kan. App.) (unpublished opinion), *rev. denied* 312 Kan. 899 (2020). Relevant to this appeal, Ricke contended the trial evidence was insufficient to support a conviction of indecent liberties with a child under the age of 14 because the State included the phrase "*who was not then married to John R. Ricke*" in the charge listed in the complaint. 2020 WL 2781698, at *5. By including this phrase in the complaint, Ricke claimed the State was obligated to prove that Ricke and the underage victim were not married. Since no such evidence was presented at trial, Ricke argued that there was insufficient evidence to prove his guilt of the crime as charged in the complaint.

Our court rejected the insufficiency of evidence claim. We found the State's affirmative defense language that Ricke and his victim were not married was surplusage

10

and the State's decision to include it in the complaint did not transform the statutory affirmative defense into a statutory element of the crime. Like the present case, after the State charged the crime, the jury was properly instructed in the statutory elements of the crime, and rendered a verdict based on the elements instruction pertaining to the crime. As was the case in *Fitzgerald*, "the information and elements of the crime as set forth and defined in [the jury instruction] established the basis for the State's burden of proof." *Ricke*, 2020 WL 2781698, at *3.

Florez was charged in the complaint with the statutory crimes of aggravated assault and disorderly conduct. While the wording used by the State in the complaint mistakenly referenced an intentional mental state rather than a knowing mental state, Florez could have raised this issue in the district and appellate courts. See *State v. Dunn*, 304 Kan. 773, 811-13, 375 P.3d 332 (2016) (establishing standard for sufficiency of charging document). Since Florez did not and does not object to the wording of the charges, the question then turns to the sufficiency of the trial evidence.

Florez claims that "any jury finding of a lower level of culpable mental state was not sufficient to sustain conviction based upon the highest level of culpable mental state that was alleged in the complaint." But that is a mistaken application of the sufficiency of evidence standard. The question properly framed is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt of the two crimes charged in the complaint. And to perform that analysis, in accordance with *Fitzgerald*, the appellate court evaluates whether the trial evidence was sufficient to prove every element of the crimes as set forth in the Kansas statutes. See 308 Kan. at 666 (Luckert J., concurring); *State v. Coburn*, 32 Kan. App. 2d 657, 660-61, 87 P.3d 348 (2004) (holding it is the trial judge's duty to explain to the jury the law of the case and to point out the elements the State must prove in a criminal case); *State v. Chaffee*, 36 Kan. App. 2d 132, 140, 137 P.3d 1070 (2006) (discussing that it is the district court's

11

responsibility to decide questions of law and to state the applicable law in the jury's instructions).

In summary, we find there was no requirement for the State to prove the erroneous culpable mental state as set forth in both charges of the complaint. As to the statutory element of culpable mental intent, we find there was sufficient evidence presented in a light most favorable to the prosecution, for a rational fact-finder to find beyond a reasonable doubt that Florez had the requisite mental state as required by K.S.A. 2017 Supp. 21-6203(a)(1) (disorderly conduct) and K.S.A. 2017 Supp. 21-5412(b)(1) (aggravated assault).

In addition to his principal sufficiency of evidence argument, Florez contends, as to the crime of aggravated assault, that the State failed to prove Patterson had apprehension of "immediate," as opposed to "imminent," bodily harm.

At trial, Patterson gave a detailed account of the encounter between him and Florez. Not only did Patterson see the knife but Patterson's son and Hobart also saw the weapon. Patterson testified that Florez told him he was going to "stick [the] knife" in him. As a result, Patterson testified he was fearful. Moreover, Florez took the stand and testified he purposely pulled out his knife and opened it to stop Patterson "dead in his tracks." According to Florez, the "knife did what [he] wanted it to do. It stopped him in his tracks and it stopped his actions[.]"

Although there was contradictory evidence regarding the distance between Florez and Patterson as well as whether Florez was brandishing or waving the knife around, our court does not reweigh evidence or make credibility findings. See *Chandler*, 307 Kan. at 668.

12

We find support in *State v. Brown*, No. 114,808, 2016 WL 7429424, at *3 (Kan. App. 2016) (unpublished opinion) for the State's view that the evidence showed that Patterson was in apprehension of immediate bodily harm. In *Brown*, our court rejected Brown's claim that the victim was not facing immediate bodily harm when the knife-wielding defendant was four to five feet away from the victim and advancing towards the victim. Because Brown could have harmed the victim within seconds, we found the evidence sufficient to find that Brown placed the victim in reasonable apprehension of immediate bodily harm. 2016 WL 7429424, at *3.

Based on our review of the evidence in a light most favorable to the State, we are convinced there was sufficient evidence for a rational fact-finder to find Florez guilty of aggravated assault with a deadly weapon beyond a reasonable doubt.

Finally, Florez contends that even by the "most generous interpretation" of the evidence, the confrontation between Florez and Patterson cannot be construed as disorderly conduct. He cites no authority to support this assertion and, assuming the punches did not land as intended, "brawling or fighting" surely characterizes two men shoving, chest bumping, and throwing punches at each other. For example, Black's Law Dictionary defines "brawl" as "1. A noisy quarrel or fight. 2. The offense of engaging in such a quarrel or fight." Black's Law Dictionary 232 (11th ed. 2019).

The jury had contradictory evidence as to who threw the first punch and who escalated the heated argument between the two men. We do not reweigh evidence or make credibility findings. See *Chandler*, 307 Kan. at 668. All three of the State's witnesses who observed the encounter testified to pushing, shoving, and punches thrown between Patterson and Florez. All things considered, it is readily apparent that Florez engaged in behavior that he knew or should have known would "alarm, anger or disturb others or provoke an assault or other breach of the peace." K.S.A. 2017 Supp. 21-6203(a).

Upon our review of the evidence in a light most favorable to the State, we are convinced there was sufficient evidence for a rational fact-finder to find Florez guilty of disorderly conduct beyond a reasonable doubt.

Affirmed.